Gary Graham and Dwight Faulkner were employed as helpers by Shoals Distributing, Inc. Both took workers' compensation leave in the late winter and early spring of 1990. When they returned to work in April 1990, they were informed that their positions were being terminated because of corporate restructuring. Graham and Faulkner then filed separate complaints against Shoals under Ala. Code 1975, § 25-5-11.1, arguing that they had been discharged in retaliation for filing workers' compensation claims. Shoals moved for a summary judgment on January 11, 1993, as to each case, submitting the affidavit of Charles Lockridge, the president of Shoals; excerpts from the depositions of Graham and Faulkner; in-house memoranda of performance appraisals of Graham; post-termination letters to Faulkner and one other terminated employee, Christopher Rickard, who is not a party to these appeals; and a memorandum in support of its motion. The circuit judge set a hearing for February 8, 1993. Graham and Faulkner's attorney then moved for a continuance. The judge granted the continuance, rescheduling the hearing for February 16, 1993. On February 16, 1993, Graham and Faulkner's attorney appeared in court with Graham and Faulkner for the hearing. However, the plaintiffs did not submit a memorandum in opposition to Shoals's motion for summary judgment, nor did they submit any affidavit or other evidence in opposition to the motion. The trial court, under Rule 56(e), Ala.R.Civ.P., entered a summary judgment for Shoals in both cases. *Page 418 
A summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. Once the moving party makes such a prima facie showing, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Ala.R.Civ.P. 56(e); Ala. Code 1975, § 12-21-12; Specialty Container Mfg., Inc. v.Rusken Packaging, Inc., 572 So.2d 403 (Ala. 1990).
Ala. Code 1975, § 25-5-11.1, states:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter."
In regard to actions brought under § 25-5-11.1, this Court has held:
 "[A]n employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the employee must prove that the reason [given by the employer] was not true but a pretext for an otherwise impermissible termination."
Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369
(Ala. 1988); see also Culbreth v. Woodham Plumbing Co.,599 So.2d 1120, 1122 (Ala. 1992).
In the context of a summary judgment motion by the defendant in a retaliatory discharge action, this Court has said:
 "[I]f the defendant has supported a summary judgment motion with evidence of a legitimate reason for terminating the plaintiff, the plaintiff must then refute that showing with his own prima facie case; of course, the plaintiff has no burden to produce evidence before trial until the defendant has made and properly supported a motion for summary judgment. If the defendant's showing of a legitimate reason is conclusive enough to establish that 'there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law,' Rule 56(c), Ala.R.Civ.P., the plaintiff would also have to produce evidence to refute that showing."
Culbreth, 599 So.2d at 1122.
In the present cases, each plaintiff presented a prima facie
case of retaliatory discharge. In Culbreth, this Court held that a prima facie case of retaliatory discharge was established by an employee's proof that he had filed a workers' compensation claim for a work-related injury, that the injury prevented him from working for a period of time, and that when he returned to work he was informed that he no longer had a job. Culbreth, 599 So.2d at 1122. In these two cases, the employees established that they both filed workers' compensation claims, that their injuries prevented them from working for a period of time, and that upon their return to work they were informed that they no longer had a job.
Although the plaintiffs presented prima facie cases of retaliatory discharge, the affidavit of Charles Lockridge sets forth legitimate reasons for firing both Graham and Faulkner.[1]
Shoals, a beer distributorship, began plans in November or December 1989 to implement a new distributing plan, called the "peddle-upgrade system," in lieu of its prior peddle system. Graham and Faulkner had been employed as helpers under the old peddle system, and their jobs involved riding with the driver of a beer truck and assisting the driver in loading and unloading beer from the truck. The drivers were paid partially on a commission basis and were responsible for selling the beer to the customers. Under the new peddle-upgrade system, *Page 419 
the drivers would be assisted by merchandisers, who would travel ahead of the drivers and set up displays and otherwise make room for the beer, so that the drivers would be responsible only for unloading and selling the beer. This new system required fewer helpers, because the drivers would have more time to unload the beer.
Lockridge stated in his affidavit that in late January 1990, he held a meeting with the operations managers and supervisors of Shoals to discuss the restructuring of jobs that would be needed to implement the new peddle-upgrade system. The people at that meeting decided that of the seven helpers employed by Shoals, all but three were to be laid off under the new plan. Lockridge said it was important under the new plan that the helpers who remained with Shoals be interested in becoming drivers and be qualified to be drivers, i.e., that they have qualities of salesmanship. At the January meeting, Lockridge stated, it was decided that Graham, Faulkner, and Christopher Rickard,[2] would be terminated from employment.[3] At that time, neither Graham nor Faulkner was on workers' compensation leave.
Lockridge stated that Graham was "unsuited for continuing to work under the new system because he rarely, if ever, talked to customers or even to his fellow employees, and it was felt that his unwillingness to converse with other people would disqualify him as a potential salesperson." Graham admitted in his deposition that his supervisors had suggested he be more outgoing. Shoals's performance appraisals of Graham indicated that his interpersonal and communication skills needed improvement. Handwritten on the back of the two appraisals were notes indicating that he needed to communicate more and that he would not talk.
Lockridge also stated in his affidavit that Faulkner was unsuited to continue employment because "he had not demonstrated any ambition or desire to continue in the beer business or to be promoted, and, in fact, had indicated that he did not wish to be promoted to a position as a swing driver."
Graham and Faulkner argue that, although they presented no evidence in opposition to the defendant's summary judgment motion, the depositions of Graham and Faulkner, which were submitted by Shoals, contained evidence creating a genuine issue of material fact as to whether they were discharged in retaliation for making their workers' compensation claims.
The excerpt from Graham's deposition, submitted by Shoals, contains Graham's account of a statement made by Lockridge concerning Graham's hiring a lawyer to handle his workers' compensation claim. One evening, Graham refused Lockridge's request that he work a double shift, because, he said, he was tired. Graham stated that "[Lockridge] didn't like it" that Graham would not work the extra hours and told Graham that they should go up to Lockridge's office and discuss it. Graham then stated that in the office Lockridge said, "If you hadn't have gotten a lawyer and came to me and, you know, talked to me about it, you wouldn't have had to pay a lawyer's fee." Graham remembered no other comments by Lockridge relating to Graham's workers' compensation claim. This mere statement by Lockridge is not substantial evidence creating a genuine issue of material fact, i.e., it does not suggest that Graham was firedsolely in retaliation for filing a workers' compensation claim.
Faulkner's deposition contained his account of a conversation with the office manager of Shoals, Ginny Nale, concerning his condition: Faulkner had seen a physician for wrist pain in the fall of 1989. He was diagnosed as having carpel tunnel syndrome. In January 1990, he telephoned Nale, who handled workers' compensation matters for *Page 420 
Shoals, and told her that his injury was probably work-related. Nale then contacted a nurse employed by Faulkner's physician, and the nurse explained to Nale why the injury was work-related. Faulkner stated that Nale was "kind of angry" during his conversation with her. Faulkner stated that he said to her, "If it's gonna be a big — you know, a big hassle, forget it." Nale replied, according to Faulkner, "No, if that's what the doctor said, then that's what we'll do." Faulkner testified that it was true at that time "that there was no question that if it was work-related it was going to be paid for."
In his deposition, Faulkner had also based his claim of retaliatory discharge on a conversation he had had with his supervisor, Cotton Johnson, before taking his workers' compensation leave. Faulkner said that during the conversation, which he said took place in March 1990, Johnson told Faulkner that Shoals was going to replace him with somebody else; Faulkner said that he "looked at [Johnson] real funny," and that at that point Johnson said, "No, don't get the wrong idea. We're replacing you with somebody else to more or less fill your shoes until you get back." Faulkner argues that this indicates that although Lockridge said his job termination was determined in January 1990, his supervisor, Johnson, had told him in March 1990 that his job was secure. However, Johnson's remark is not substantial evidence that Faulkner was fired solely for filing a workers' compensation claim. At most, it shows that Johnson knew that a decision had already been made to fire Faulkner, but equivocated when he was pressed by Faulkner's "funny look."
Finally, Faulkner argues that Lockridge's explanation for firing him and Rickard was contradicted by the fact that "Shoals tried to hire him and Rickard back after they were fired." However, Shoals did not offer Faulkner or Rickard their old jobs as helpers, but offered them only part-time positions in a warehouse. Faulkner and Rickard declined the offers. Shoals's offer of jobs with less responsibility is consistent with Lockridge's explanation that Faulkner had indicated that he did not wish to be promoted to a more responsible position.
The legitimate reasons offered in Lockridge's affidavit for terminating both Graham and Faulkner's employment were not disputed as to any material fact. See Culbreth, 599 So.2d at 1199. The plaintiffs failed to respond under Rule 56(e) and present substantial evidence to refute these reasons. Because Shoals met its burden under Rule 56(e) and Culbreth by presenting evidence that Graham and Faulkner were terminated for legitimate reasons, and because Graham and Faulkner offered no evidence to refute Shoals's evidence and have not pointed to substantial refuting evidence in Shoals's submissions, the summary judgment for Shoals is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and HOUSTON, KENNEDY and COOK, JJ., concur.
[1] Although the plaintiffs argue that this affidavit should not be considered because, they say, it contains inadmissible hearsay, this argument is without merit. The affidavit states that it is based on Lockridge's personal knowledge, in accordance with A.R.Civ.P. 56(e). Furthermore, the plaintiffs did not make such an objection in the trial court, so the objection is now waived and cannot be raised on appeal. SeeCain v. Sheraton Perimeter Park South Hotel, 592 So.2d 218, 222
(Ala. 1991).
[2] Rickard was also fired after he returned from workers' compensation leave in May. The reason Lockridge stated for firing him was that Rickard had advised Shoals managers "that he wanted to pursue a career in electronics, that he did not see himself staying with the company on a long-term basis, and that his ultimate career goal was not in the beer industry." Lockridge also stated that Rickard had told his supervisors that his goal was to ultimately work for TVA.
[3] Also, although Lockridge's affidavit stated that Shoals was going to fire four helpers, the record and the parties' briefs do not tell us whether a fourth helper was actually fired.