This is a retaliatory discharge case. The issues presented are (1) whether the trial court committed reversible error by striking the plaintiff's affidavits in opposition to the defendant's motion for summary judgment; and (2) whether the trial court committed reversible error by granting the defendant's motion for summary judgment. We affirm the summary judgment entered in favor of the defendant, Dunlop Tire Corporation.
The plaintiff, Michael D. Smith, was injured in an on-the-job accident while employed as a mold servicer at a tire manufacturing plant operated by Dunlop in Huntsville, Alabama. After the company nurse advised Smith to see a doctor concerning the injury to his arm, Smith's supervisor drove him to a doctor who examines Dunlop's employees who have been injured on the job. The doctor diagnosed Smith's injury as a sprained left wrist and instructed him not to return to work for two days. Smith reported the doctor's diagnosis and order to the company nurse, who in turn told him to report back to work according to the doctor's instructions. When Smith returned to work three days later, he was informed by David Gooch, personnel manager for Dunlop, that he had violated the attendance policy set out in Dunlop's collective bargaining agreement with his union, and that his employment was, therefore, terminated.
Smith averred in his complaint that he filed a "First Report of Injury" with the company nurse regarding his accident, in accordance with Alabama's Workers' Compensation Act. Dunlop Tire Corporation admitted the allegation in its answer to the complaint. Therefore, for the purpose of this appeal, we hold that Smith filed a workers' compensation claim.
Smith sued Dunlop and Gooch, claiming that he was fired in retaliation for his filing a workers' compensation claim following his on-the-job injury. Smith voluntarily dismissed Gooch from the lawsuit, and his claim against Dunlop proceeded to a trial by jury. During the trial, the judge granted Dunlop's motion for a mistrial.[1] Thereafter, Dunlop filed a motion requesting the trial court to reconsider its denial of Dunlop's motion for summary judgment, which the trial court did. The trial court granted Dunlop's motion to strike certain affidavits submitted by Smith in opposition to Dunlop's motion for summary judgment and granted the motion for summary judgment. Smith appeals.
In his complaint, Smith claimed that Dunlop had violated § 25-5-11.1, Ala. Code 1975, contending that Dunlop had terminated him from his employment at Dunlop in retaliation for his filing of a workers' compensation claim.[2] Dunlop, on the other hand, contends *Page 916 
that Smith was terminated pursuant to the "no fault" attendance policy in the collective bargaining agreement between Dunlop and Smith's union, under which absences resulting from an occupational accident are not "excused absences."
Smith is a member of Local 915 of the United Rubber, Cork, Linoleum and Plastic Workers of America. Dunlop and the Union are parties to a collective bargaining agreement that governs the employment terms and conditions for all bargaining unit employees, including Smith. As a part of its labor agreement, Dunlop negotiated with the Union a "Memorandum of Agreement" regarding absences. The Memorandum contains a "no fault" absence control program, under which absences are counted against an allowable quota without consideration of the cause or duration of the absence. However, not every absence would subject an employee to termination.
The Memorandum provides, in part, as follows:
 "All occurrences of absences shall be included in this program other than the following:
"1. Jury Duty
"2. Military Duty
"3. Contractual Leave for Death in Family
"4. Union Business
 "5. Attendance at a Compensation Hearing or Deposition
"6. Disciplinary Leave
"7. Vacation
"8. Permission or Leave of Absence (nonmedical)"
Under the terms of the Memorandum, absences are subject to disciplinary action in accordance with § 3.02 of the collective bargaining agreement, which provides for a five-step discipline system. The first three steps are written warnings, the fourth step is a written warning and a suspension, and the fifth step is discharge. In accordance with the collective bargaining agreement, Dunlop issued first-, second-, and third-step written warnings to Smith for various absences. Dunlop also issued a fourth-step written warning and suspended Smith for three working days because of four absences. After this fifth and final occurrence, Smith was given a termination notice, which stated that the termination was "pursuant to our step discipline system and the termination step was [based on] our Attendance Guidelines."
Thereafter, Smith filed a grievance under the collective bargaining agreement, protesting his discharge, claiming that Dunlop had improperly terminated him, because, he said, his absence was with permission from the company nurse, a Dunlop employee. The labor agreement provides that such grievances may be submitted to an arbitrator for a final and binding decision. Smith pursued his grievance to arbitration. Arbitrator H. Elsworth Steele, chosen by Dunlop and the Union, held a hearing on Smith's grievance. Smith and several representatives, both from the Union and from Dunlop, presented testimony, called witnesses, and submitted documentary evidence in support of their positions.
In denying Smith's grievance, Arbitrator Steele made the following findings:
 "Prior to July, 1992, Smith was properly at Step 4 of the Attendance Program. He had to go 90 days from April 23, 1992, without a chargeable absence. He had been clearly warned of this fact and was aware that in the past, days of absence caused by occupational accidents had been charged against him.
 "The Union's further argument that Smith's absences on July 14 and 15 cannot be counted because the Company through its 'agent,' Dr. Palmer, told Smith not to come to work, is not persuasive. Many, if not most, times a sick or injured employee sees a doctor, the doctor tells the worker *Page 917 
not to return to work for a given time. Despite this fact, the parties agreed in 2(B) of MOA # 8 that absences due to sickness would count as one occurrence even if they were certified by a doctor. The parties included no exception for patients 'ordered' by 'Company doctors' to stay at home for a period of time."
Smith argues that under the attendance program as defined in the collective bargaining agreement, if a person receives permission to leave the plant or to miss time from work, then that absence is excused. Thus, contrary to the arbitrator's assertions, Smith argues that the company nurse, a Dunlop employee, gave him permission, a recognized exception under item eight of the Memorandum. Based on these facts, Smith contends that he has a valid claim for retaliatory discharge, because he was employed by the defendant; he sustained a work-related accident and injury; he filed a claim for workers' compensation and that claim was accepted by the company; he obtained medical benefits pursuant to the Workers' Compensation Act; and he was subsequently terminated without just cause.
Smith asserts that the trial court committed reversible error by granting Dunlop's motion for summary judgment. A summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Bussey v. John DeereCo., 531 So.2d 860, 862 (Ala. 1988). In regard to actions brought pursuant to § 25-5-11.1, this Court has held:
 "[A]n employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the [employee] was terminated for a legitimate reason, whereupon the employee must prove that the reason [given by the employer] was not true but a pretext for an otherwise impermissible termination."
Twilley v. Daubert Coated Products, 536 So.2d 1364, 1369 (Ala. 1988). See also Culbreth v. Woodham Plumbing Co.,599 So.2d 1120, 1122 (Ala. 1992).
In Graham v. Shoals Distributing, Inc., 630 So.2d 417, 418
(Ala. 1993), this Court discussed the burden on a plaintiff when an employer proffers a legitimate reason for a termination and the matter is pending on a motion for summary judgment:
 "In the context of a summary judgment motion by the [employer] in a retaliatory discharge action, this Court has said:
 " 'If the [employer] has supported a summary judgment motion with evidence of a legitimate reason for terminating the [employee], the [employee] must then refute that showing with his own prima facie case; of course, the [employee] has no burden to produce evidence before trial until the [employer] has made and properly supported a motion for summary judgment. If the [employer's] showing of a legitimate reason is conclusive enough to establish that "there is no genuine [issue] as to [that] material fact and that the moving party is entitled to a judgment as a matter of law," Rule 56(c), Ala.R.Civ.P., the [employee] would also have to produce evidence to refute that showing.' "
630 So.2d at 418 (quoting Culbreth v. Woodham Plumbing Co.,599 So.2d 1120, 1122 (Ala. 1992)). See, also, Provo v. ContinentalEagle Corp., 650 So.2d 881 (Ala. 1994); Terry v. Lee ApparelCo., 656 So.2d 811 (Ala.Civ.App. 1994); see, also,Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 317 (Ala. 1992); Overton v. Amerex Corp., 642 So.2d 450 (Ala. 1994).
Smith relies heavily upon Overton, claiming that the facts of that case are similar to those of his case and that this Court held in that case that Overton had offered substantial evidence creating a genuine issue of material fact. Smith says that he presented substantial evidence that he had received permission from the plant nurse, a Dunlop employee, to be absent, and that he, therefore, fits into the Memorandum category that provides that an absence will be excused if the worker is absent with permission. He argues that no supervisor, manager, or personnel manager of Dunlop contacted him before *Page 918 
his termination and told him that his absence was not excused.
Smith also says that he presented the affidavits of three of Dunlop's former employees to refute Dunlop's claim of a legitimate reason for his discharge. Smith argues that the testimony of these affiants establishes that Dunlop had instituted a pattern and practice of terminating in retaliation for filing workers' compensation claims. Smith citesContinental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 319 (Ala. 1992), in which this Court held that pattern and practice evidence is admissible in retaliatory discharge cases for the purpose of showing negligence or other improper conduct. Smith argues that the fact that other similarly situated Dunlop employees who had on-the-job injuries had been subjected to threats, harassment, and intimidation, is admissible to refute Dunlop's contention that it terminated Smith for a legitimate reason not related to his seeking or obtaining workers' compensation benefits.
Dunlop's argument in support of the trial court's judgment is simple and to the point. It says that it supported its motion for summary judgment by introducing evidence that Smith was terminated for a legitimate reason — excessive absences under the collectively bargained attendance program. Dunlop says that the evidence is undisputed that Smith was aware of, and had been subject to, the collective bargaining agreement, which did not permit absences for injuries, whether work-related or not.
In entering the summary judgment, the trial court relied uponHayden v. Bruno's, Inc., 588 So.2d 874 (Ala. 1991), in which this Court held that Hayden had presented no evidence indicating that Bruno's terminated his employment because he had filed a workers' compensation claim, unless the Court simply assumed that, because Hayden's employment was terminated after he had filed that claim, the termination was retaliatory. See, Beaulieu of America, Inc. v. Dunn, 658 So.2d 454
(Ala.Civ.App. 1994).[3] Dunlop argues that "there can be no liability where the evidence shows that the employee was terminated because he violated the employer's attendance policy, and not because he filed a worker's compensation claim," which Dunlop says "is by far the majority position on this issue," citingChiaia v. Pepperidge Farm, Inc., 24 Conn. App. 362,588 A.2d 652 (1991), cert. denied, 219 Conn. 907, 593 A.2d 133 (1991) (holding that an employer's neutral application of an absence control policy is permissible, and noting that few courts in the nation "have expanded the definition of discriminatory discharge to include a discharge occasioned by the neutral application of an absence control policy to an employee who was injured and collected worker's compensation benefits"); Duncanv. New York State Developmental Center, 63 N.Y.2d 128, 134,470 N.E.2d 820, 823, 481 N.Y.S.2d 22, 25 (1984) (an employer could properly enforce its policy of terminating employees who had been absent for more than one year, even where the employee had been absent because of a work-related injury, the court reasoning that "an employment practice that is applied evenhandedly to all employees represents a neutral policy that does not constitute discrimination, particularly if it is based on legitimate business concerns"); Metheney v. Sajar Plastics,Inc., 69 Ohio App.3d 428, 590 N.E.2d 1311 (1990) (holding that the termination of an employee who had missed work as a result of a work-related injury was permissible where the termination was pursuant to a neutral absence control program); Pierce v.Franklin Electric Co., 737 P.2d 921 (Okla. 1987) (holding that an employee may be terminated for absenteeism even if the absences are caused by a compensable injury); Clifford v.Cactus Drilling Corp., 419 Mich. 356, 353 N.W.2d 469 (1984) (in which the court held that an employee's protection from a retaliatory discharge does not necessarily include protection from a termination based upon an absence from work due to a work-related injury); Anderson v. Standard Register Co.,857 S.W.2d 555 (Tenn. 1993) (holding that an employer may discharge an employee pursuant to a facially neutral absence *Page 919 
control policy for absences caused by a work-related injury);Palmer v. Miller Brewing Company, 852 S.W.2d 57 (Tex.Ct.App. 1993) (holding that an employer may terminate an employee pursuant to an absence control policy that does not excuse absences related to on-the-job injuries); Yoho v. Triangle PWC,Inc., 175 W. Va. 556, 562, 336 S.E.2d 204, 210 (1985) (in which the court noted that the employee's termination "was mandated by a facially neutral provision of [a] Collective Bargaining Agreement" and that the employee would have been terminated just as quickly under the agreement if she had never applied for workers' compensation benefits).
The summary judgment is consistent with the ruling of the arbitrator, who determined that "the parties agreed in 2(B) of MOA # 8 that absences due to sickness would count as one occurrence even if they were certified by a doctor," and that "[t]he parties included no exception for patients 'ordered' by 'Company doctors' to stay at home for a period of time."
Dunlop argues, and we agree, that the other workers who gave affidavits presented by Smith were not similarly situated, in that, unlike Smith, none of the affiants had been terminated for violating a collective bargaining agreement attendance program.
Based on the foregoing, we conclude that Dunlop presented sufficient evidence to make a prima facie showing that Smith was terminated for a legitimate reason, and that Smith failed to rebut that showing by presenting sufficient evidence that Dunlop's reason was a mere pretext for an otherwise impermissible termination.[4] The summary judgment is, therefore, due to be affirmed.
AFFIRMED.
SHORES, HOUSTON, KENNEDY, INGRAM, and COOK, JJ., concur.
BUTTS, J., dissents.
[1] The record is devoid of any information about the mistrial, except for the entry on the case action summary, which reads:
 "A venire of twenty-eight (28) persons was called out of which a jury of twelve (12) persons was struck, and the Court proceeded to take [ore tenus] testimony and evidence. . . . On the 18th day of May, 1994, at the point in the proceedings just after the jury had been adjourned for lunch, the defendant made motion for a mistrial, which said motion was granted by the Court, and the order of mistrial is hereby entered hereon.
 "Case to be remanded to this Court's docket to be set for trial.
"S/ Jeri Blankenship, Circuit Judge"
[2] Section 25-5-11.1, Ala. Code 1975, states:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter. . . ."
The term "action" in this section was not intended to limit the cause of action to the situation where one employee has filed an "action" or lawsuit" as opposed to merely filing a "claim" with the employer.
 "Viewed pragmatically, a literal interpretation of § 25-5-11.1 would not only encourage some employers to terminate injured employees who file claims for worker's compensation benefits, but it would also effectively discourage employees from ever filing a claim in the first place."
McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299,1301 (Ala. 1991)
[3] In Beaulieu, the Court of Civil Appeals said:
 "We refuse to . . . assume [that Dunn was terminated because he filed a workers' compensation claim]. Even if he proved a prima facie case, there is no evidence that the reasons Beaulieu gave for his employment termination were a pretext for an otherwise impermissible termination. Therefore, the trial court's denial of the motion for JNOV is due to be, and it is hereby, reversed, and a judgment is rendered for Beaulieu."
658 So.2d at 460 (citation omitted).
[4] The affidavits presented by Smith were actually presented in response to the defendant's request that its motion for summary judgment be reconsidered after the court had granted a mistrial. The trial court struck these affidavits. We have considered the affidavits, without determining whether they were timely filed.