Alicia Massey appeals from a summary judgment entered in favor of Krispy Kreme Doughnut Corporation ("Krispy Kreme") as to her claims alleging retaliatory discharge in violation of Ala. Code 1975, § 25-5-11.1, breach of contract, and fraud.
Massey was hired by Krispy Kreme on November 6, 2000. The employment application signed by Massey stated that she was an "at-will" employee. On December 3, 2000, Massey suffered an on-the-job injury when she slipped and fell while working at a Krispy Kreme store located in Huntsville. She reported the fall to the bookkeeper of the store and worked the remainder of her shift, thinking that she was not hurt. Massey did not work the next two days, which were scheduled off days.
According to Massey's deposition testimony, however, Massey realized on the day after her fall that her back and neck were hurting. Massey called Allen Woodward, the manager of Krispy Kreme's Huntsville store, and advised him of her injury. Woodward advised Massey to see Dr. William Walley.[1] Massey was examined by Dr. Walley, who advised her that she could return to work immediately. However, Massey did not return to work on her next scheduled shift, on December 6, because, according to Massey, she was "swollen up and hurting." Massey testified that, instead, she went to the emergency room at the Huntsville Hospital. According to Massey, as a result of her visit to the Huntsville Hospital emergency room she obtained an "off-work slip," pursuant to which she was supposed to return to work on December 9.
On December 8, 2000, Massey returned to Krispy Kreme's store to give Woodward copies of paperwork from her medical providers and to pick up her paycheck. During that visit, Massey told the bookkeeper that her paycheck was incorrect. After a discussion between Massey and the bookkeeper about the correct number of hours and the procedure for clocking in, Massey was asked to go into Woodward's office. After a discussion between Massey and Woodward, Woodward discharged Massey.
The parties disagree as to the material facts concerning the termination of Massey's employment. Krispy Kreme presented evidence tending to indicate that, on December 8, Massey was "smart" or rude to Krispy Kreme's bookkeeper and that she was loud and used profanity and was insubordinate to Woodward.
Massey, on the other hand, gave a different account of the meeting with Woodward. She testified in her deposition that *Page 835 
Woodward was already upset with her before she went into his office and that he was harsh with her and that, as a result, she cried during their meeting. She also testified that she was not rude to the bookkeeper and that she never used profanity toward Woodward. Massey also testified that Woodward told her that he had received a complaint as to Massey but refused to answer any questions about it. Massey testified that, during this meeting, she told Woodward that "for him to be a manager he had a bad attitude." According to Massey, Woodward responded: "Well, you don't have to worry about that because you no longer work here."
On March 19, 2001, Massey filed a complaint against Krispy Kreme and Krispy Kreme Doughnut Company ("Krispy Kreme Company"). The initial complaint sought workers' compensation benefits and damages for retaliatory discharge in violation of § 25-5-11.1, and it included a demand for a jury trial. Krispy Kreme was served with the summons and complaint and, on April 18, 2001, filed an answer. Krispy Kreme subsequently filed a motion to strike the jury demand or, in the alternative, to conduct a separate trial for the workers' compensation claim. The trial court granted the motion for separate trials.
Massey subsequently filed an amended complaint against both Krispy Kreme and Krispy Kreme Company, adding claims asserting breach of contract and fraud allegedly arising out of the termination of Massey's employment. Thereafter, Krispy Kreme filed an answer to the amended complaint and, subsequently, a motion for a summary judgment, together with evidentiary attachments. Massey filed a reply, together with evidentiary materials. By an order dated February 21, 2003, the trial court granted the motion for a summary judgment as to all claims asserted against Krispy Kreme except the workers' compensation claim.
Although Krispy Kreme Company was served with both the complaint and the amended complaint, at no time did it file an answer or other responsive pleading.
On March 21, 2003, Massey filed a motion to alter, amend, or vacate the summary judgment, which was denied on May 19, 2003. Subsequently, Massey and Krispy Kreme settled the workers' compensation claim. The settlement was presented to and approved by the trial court on September 9, 2003.
The trial court's February 21, 2003, summary judgment did not purport to address Massey's claims asserted against Krispy Kreme Company. Thus, on October 2, 2003, Massey filed a motion requesting that the trial court certify that summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. In response to Massey's motion, the trial court entered an order certifying as final the summary judgment in favor of Krispy Kreme. Thereafter, Massey appealed to the Alabama Supreme Court; that Court transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
In this appeal, Massey contends that the trial court erred in entering the summary judgment because, she says, there was substantial evidence to support each of her three claims. Krispy Kreme argues on appeal that the summary judgment was proper, and it also contends that Massey's appeal is untimely.
Because it raises a question as to this court's jurisdiction, we first consider Krispy Kreme's contention that Massey's appeal is untimely. Specifically, Krispy Kreme contends that Massey's time to appeal began to run on May 19, 2003, when the trial court denied her motion to alter, *Page 836 
amend, or vacate the summary judgment in favor of Krispy Kreme.
Ordinarily, an appeal can be taken only from a final judgment. Ala. Code 1975, § 12-22-2. "A final judgment is one that completely adjudicates all matters in controversy between all the parties." Eubanks v. McCollum, 828 So.2d 935, 937 (Ala.Civ.App. 2002). In Eubanks, one of the parties had been served, but had not appeared, and the trial court did not adjudicate the claims against that defendant in the judgment from which an appeal was taken. Unlike the present case, no certification was made under Rule 54(b). Because the judgment at issue in Eubanks was not final as to all parties, this court dismissed the appeal.828 So.2d at 937.
Similarly, in the present case, Krispy Kreme Company was served with the complaint, but did not answer or otherwise respond to it, and the summary judgment in favor of Krispy Kreme did not purport to adjudicate Massey's claims against Krispy Kreme Company. Therefore, until the trial court's entry of its certification under Rule 54(b), the summary judgment was not final and appealable. Massey filed her appeal within 42 days after the entry of the certification under Rule 54(b). Her appeal therefore was timely.
Accordingly, we now address the merits of the summary judgment itself.
 "We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing `that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990). If the movant meets this burden, `the burden then shifts to the nonmovant to rebut the movant's prima facie showing by "substantial evidence."' Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992)."
Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122, 123
(Ala.Civ.App. 2002). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989).
We turn first to Massey's retaliatory-discharge claim. Under Alabama law, "an employment contract is generally terminable at will by either party, with or without cause or justification — for a good reason, a wrong reason, or no reason at all."Culbreth v. Woodham Plumbing Co., 599 So.2d 1120, 1121 (Ala. 1992). One exception to this general rule is contained in §25-5-11.1, which provides:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter. . . ."
In Alabama Power Co. v. Aldridge, 854 So.2d 554 (Ala. 2003), our Supreme Court reiterated the elements of a claim under §25-5-11.1:
 "1) an employment relationship, 2) an on-the-job injury, 3) knowledge on the part of the employer of an on-the-job injury, and 4) subsequent termination of *Page 837 
employment based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim."
854 So.2d at 563.
 "In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364 (Ala. 1988), this Court interpreted this retaliatory discharge statute as it regards the prohibition against discharging an employee `solely' because the employee has made a worker's compensation claim. The Court stated the following test:
 "`We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was "terminated" because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the employee must prove that the reason given by the employer was not true but a pretext for an otherwise impermissible termination.'
"Twilley, 536 So.2d at 1369."
Culbreth, 599 So.2d at 1122.
 "A plaintiff, therefore, has the burden of presenting sufficient evidence indicating that the plaintiff was discharged because he or she filed a claim for workers' compensation benefits, but if there is uncontradicted evidence of an independently sufficient basis for the discharge then the defendant is entitled to a judgment as a matter of law. . . . An employer's stated basis for a discharge is sufficient as a matter of law when the underlying facts surrounding the stated basis for the discharge are undisputed and there is no substantial evidence indicating (a) that the stated basis has been applied in a discriminatory manner to employees who have filed workers' compensation claims, (b) that the stated basis conflicts with express company policy on grounds for discharge, or (c) that the employer has disavowed the stated reason or has otherwise acknowledged its pretextual status."
Aldridge, 854 So.2d at 568.
Citing Culbreth and several other Alabama cases, Massey argues that the temporal proximity between her filing of a workers' compensation claim and her subsequent discharge satisfies her initial burden of presenting evidence of a causal connection between the filing of that claim and her discharge.See also Rickard v. Shoals Distrib., Inc., 645 So.2d 1378 (Ala. 1994); Overton v. Amerex Corp., 642 So.2d 450 (Ala. 1994); andGraham v. Shoals Distrib., Inc., 630 So.2d 417 (Ala. 1993). In addition, Massey argues that evidence in the record of her satisfactory work performance before her discharge, evidence indicating that Woodward was irritated when Massey telephoned him to advise him of her injury, evidence indicating that the reasons given by Krispy Kreme for her discharge were false, evidence indicating that Krispy Kreme has not terminated the employment of others who have cursed at Woodward or acted insubordinately toward him, and evidence that Krispy Kreme has discharged other employees who have filed workers' compensation claims constitute proof of causation.
In Aldridge, our Supreme Court stated:
 "Our caselaw has not addressed in detail the evidence a plaintiff must present to show that he was fired solely because of his workers' compensation claim. 6 Arthur Larson and Lex K. Larson, Larson's Workers' Compensation Law § 104.07[3] (2001), states: `Proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory *Page 838 
evaluations. Any evidence of an actual pattern of retaliatory conduct is, of course, very persuasive.' We have also found several circumstances considered by other jurisdictions to indicate that a plaintiff has made a sufficient showing of a causal connection so as to establish a prima facie case.
 "However, the statutes in most states do not use the word `solely' in defining a cause of action for retaliatory discharge. Some states, such as Texas and South Carolina, use a `but for' test, which requires an employee to prove `that, but for the filing of the workers' compensation claim, the discharge would not have occurred when it did.' Wal-Mart Stores, Inc. v. Amos, 79 S.W.3d 178, 184 (Tex.Ct.App. 2002); see also Wallace v. Milliken Co., 305 S.C. 118, 121, 406 S.E.2d 358, 360 (1991). Other states require less, merely calling for a causal connection between the claim for workers' compensation benefits and the discharge. . . .
". . . .
 "Texas considers the following factors as circumstantial evidence of a causal relation between the filing of a workers' compensation claim and an employee's discharge:
 "`1) knowledge of the compensation claim by those making the decision on termination, 2) expression of a negative attitude toward the employee's injured condition, 3) failure to adhere to established company policy, 4) discriminatory treatment in comparison to similarly situated employees, 5) sudden changes in an employee's work performance evaluations following a workers' compensation claim, and 6) evidence that the stated reason for the discharge was false.'
 "Chhim v. University of Houston, 76 S.W.3d 210, 218
(Tex.Ct.App. 2002). Many states also consider `proximity in time between the filing of the workers' compensation claim and discharge' a persuasive factor in establishing a causal connection. Rebarchek v. Farmers Coop. Elevator Mercantile Ass'n, 272 Kan. 546, 555, 35 P.3d 892, 899 (2001) (stating that proximity in time was `a typical beginning point. . . . [but] not the sole means of showing a causal connection'). See also Anderson [v. Meyer Broadcasting Co.], 630 N.W.2d 46 [(N.D. 2001)]; Nestor [v. Bruce Hardwood Floors, L.P.], 210 W.Va. 692, 558 S.E.2d 691 [(2001)]."
Aldridge, 854 So.2d at 564-65 (footnote omitted). See alsoCoca-Cola Bottling Co. Consol. v. Hollander, 885 So.2d 125, 131
(Ala. 2003) (plurality opinion) (citing Hayden v. Bruno's,Inc., 588 So.2d 874 (Ala. 1991), for the proposition that "mere closeness in time typically is not sufficient evidence of a retaliatory discharge," and stating that "[c]lose temporal proximity between the claim and the termination must be so coincidental as to raise an inference that the claim caused the termination"). The Aldridge Court then explained that, provided the issue of causation is otherwise due to be presented to a jury,
 "[c]ases from jurisdictions providing a remedy for retaliatory discharge when an employee has suffered an on-the-job injury and has then filed a claim for workers' compensation benefits that do not require the employee to prove sole causation are illustrative of the circumstantial evidence sufficient to establish a prima facie case of causation."
Aldridge, 854 So.2d at 566.
Based on a careful review of the evidence in the record before us, and in light of the foregoing authority, we conclude that Massey presented sufficient evidence to satisfy her burden of showing a *Page 839 
causal link between her filing of a claim for workers' compensation benefits and the termination of her employment.
Krispy Kreme responded to this showing by coming forward with evidence that Massey's employment was terminated for a legitimate reason, namely, that Massey cursed at Allen Woodward during their meeting on December 8, 2000, and was otherwise insubordinate.[2] It also makes note of evidence to the effect that Massey acted rudely to the bookkeeper for Krispy Kreme immediately before Massey's meeting with Woodward.
In response to Krispy Kreme's evidence of a legitimate reason for terminating Massey's employment, Massey points to testimony by her that paints a quite different picture of the events of December 8 than that given by Woodward. Massey's testimony, which we have previously described, if believed by a jury, could reasonably lead to a finding that Massey was not rude to the bookkeeper and did not curse at or act insubordinate to Woodward. We therefore agree with Massey that there is a genuine issue of material fact as to whether the meeting between Massey and Woodward occurred in the manner described by Woodward.
Furthermore, as to whether Woodward's stated reason for the discharge was not the true reason for that discharge, Massey also relies upon affidavits from two former employees of Krispy Kreme in which testimony is given that other employees have cursed at and otherwise shown disrespect and insubordination toward Woodward without suffering either discharge or other disciplinary action. She also points to testimony in one of those affidavits that it was common for Woodward to curse at employees in the workplace. This testimony also supports Massey's contention that the record does not satisfy the Aldridge requirement that there be "no substantial evidence indicating . . . that the . . . basis [stated by the employer] has been applied in a discriminatory manner to employees who had filed workers' compensation claims."854 So.2d at 568.
In summary, although the evidence presented by Massey in this case is, in the main, disputed by Krispy Kreme, we are required to view the evidence, in its entirety, in the light most favorable to Massey. On that basis, we conclude that Massey has presented substantial evidence that creates genuine issues of material fact. Accordingly, the trial court erred in entering the summary judgment on Massey's retaliatory-discharge claim.
We turn next to Massey's contention that her discharge violated the terms of an employment contract that she alleges arose from a two-page document entitled "Standards of Conduct" signed by Massey on the day she began her employment with Krispy Kreme, November 6, 2000. By signing this document, Massey acknowledged to the company that she had "read and understood the standards" set forth therein and that she "agree[d] to comply with the company's standards as outlined."[3] *Page 840 
In Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 728
(Ala. 1987), our Supreme Court stated:
 "[T]he rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification. This means a good reason, a wrong reason, or no reason.
 "The cases reveal that three elements must be shown to establish that an employment contract is one other than one terminable at will: (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered."
(Emphasis and citations omitted.) It has been held that an "employment-at-will relationship can be modified by provisions in an employee handbook by which an employer promises not to discharge an employee except by specified procedures or for specified causes." Campisi v. Scoles Cadillac, Inc.,611 So.2d 296, 298 (Ala. 1992).
Assuming for the sake of discussion that the "Standards of Conduct" signed by Massey on November 6, 2000, should be treated as an "employee handbook" for purposes of applying the principles articulated in Hoffman-La Roche, Inc., whether those "Standards of Conduct" are sufficient to create specific contractual duties by Krispy Kreme that have been breached in this case depends on the following factors:
 "First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he *Page 841 
has become generally aware of the offer. His actual performance supplies the necessary consideration."
Hoffman-La Roche, Inc., 512 So.2d at 735. Based on a careful review of the record before us, we conclude that the trial court properly could have determined that the conditions necessary for the "Standards of Conduct" to abrogate Massey's employment-at-will status were not in place. In addition to having examined the provisions of the "Standards of Conduct" from which Massey contends a contract was implied, we are influenced by the undisputed fact that, on November 7, 2000, the day after she signed the "Standards of Conduct," Massey signed an employment application that contained the following express
acknowledgment by her: "Employment at Krispy Kreme is on an `at will' basis. This implies that either the employee or the company may terminate the employment relationship at any time, for any reason, with or without cause or prior notice." See Hoffman-LaRoche, Inc., 512 So.2d at 734 (holding that "whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties" and that therefore an employer that does not wish the policies contained in an employee handbook to be construed as an offer of unilateral contract may so state in the handbook); see also Bell v. SouthCentral Bell, 564 So.2d 46, 48 (Ala. 1990) ("Whether the language in the handbook was intended to be an offer is determined by reference to the reasonable meaning of the parties' external and objective manifestations, rather than by their uncommunicated beliefs.").
Finally, we turn to Massey's argument that the trial court erred in entering the summary judgment on her claim alleging fraud. According to Massey, her discharge by Woodward rendered false a representation implied in the "Standards of Conduct" that she would be discharged only after receiving progressive discipline. Among other things, the trial court found that the record did not support a fraud claim against Krispy Kreme. Based on our review of the pertinent documents, as discussed above, we find no error by the trial court in this regard.[4]
Based on the foregoing, we affirm the summary judgment entered by the trial court with respect to Massey's breach-of-contract and fraud claims; we reverse the summary judgment entered by the trial court against Massey on her retaliatory-discharge claim, and we remand the cause for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and PITTMAN, J., concur.
THOMPSON and BRYAN, JJ., concur in the result, without writing.
[1] Krispy Kreme paid the costs of Massey's visit to Dr. Walley, and for subsequent visits to Huntsville Hospital.
[2] Krispy Kreme argues that, because Massey admitted telling Woodward that he had a "bad attitude," there is no factual dispute as to whether Massey was in fact insubordinate. The issue actually presented in this regard is whether Woodward believed Massey to be insubordinate and then acted on that belief. Whether Massey's words reasonably could be construed as being insubordinate therefore becomes relevant. In turn, such factors as the context and the tone of voice in which Massey made her comment to Woodward become relevant. In light of the conflicting evidence tending to show two different versions of the meeting in question, we cannot conclude that there is no genuine issue of fact as to whether Massey was insubordinate.
[3] The "Standards of Conduct" which Massey signed begins with an introductory section that states, in part:
 "Krispy Kreme expects employees to observe `common sense' rules of honesty, good conduct, general job interest, safe practices, and to adhere to generally accepted customs of good taste in our relations with each other. In our company, as in any group with a common purpose, standards are necessary. Employee cooperation and good judgment will benefit the well being of all. These rules apply to all employees of Krispy Kreme. They list examples of certain practices which cannot be tolerated, and as such are not all inclusive.
". . . .
 "Failure to observe the company Standards of Conduct may be cause for either immediate dismissal or dismissal after warning, depending upon the seriousness of the offense as determined by supervision."
(Emphasis added.) Following this introductory section is a section that begins with the statement: "[v]iolation of these rules may lead to immediate discharge or final written warning depending upon the seriousness of the circumstances," after which are listed 17 specific infractions. After those 17 infractions are listed, another section of the "Standards of Conduct" begins as follows:
 "The first violation of any rule in this group may result in a verbal discussion or written warning.
 "The second violation of that rule or any other rule in this group may result in a final written warning or termination."
(Emphasis in original.) Following these two statements is a list of 20 specific infractions, including "[u]se of profane language or otherwise causing embarrassment to, or friction among other employees or customers."
All of the foregoing is on the first page of the "Standards of Conduct." On the second page are found two additional sections titled "Solicitation" and "Employee Sanitation Standards," respectively, each of which list additional specific standards of conduct required of employees in regard to the matters indicated by those titles.
[4] In addition, even if one assumed that a fraudulent representation by Krispy Kreme to Massey could be implied by the "Standards of Conduct," this would in turn beg the question of the reasonableness of any reliance by Massey on that representation in light of the fact that, on the day after she signed the "Standards of Conduct," she signed a document in which she expressly agreed that her employment was to be "on an `at will' basis" and that the company could terminate the employment relationship "at any time, for any reason, with or without cause or prior notice." See generally Foremost Ins. Co. v. Parham,693 So.2d 409, 421 (Ala. 1997). *Page 842