536 So.2d 1364 (1988)
Marvin TWILLEY
v.
DAUBERT COATED PRODUCTS, INC.
DAUBERT COATED PRODUCTS, INC.
v.
Marvin TWILLEY.
86-1503, 86-1554.
Supreme Court of Alabama.
September 30, 1988.
Rehearing Denied December 16, 1988.
Charles F. Norton, Jr., of Falkenberry & Whatley, Birmingham, for appellant/cross-appellee.
John W. Clark, Jr., and Larry Bradford of Clark & Scott, Birmingham, for appellee/cross-appellant.
MADDOX, Justice.
This case involves the interpretation of the retaliatory termination section of Alabama's Workman's Compensation Act, Ala. *1365 Code 1975 § 25-5-11.1, which provides in pertinent part as follows:
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover worker's compensation benefits under this chapter...."
On November 7, 1984, Marvin Twilley sustained an injury to his back while working for Daubert Coated Products, Inc. He filed a claim for worker's compensation benefits, and he received total temporary worker's compensation benefits until July 23, 1985. On August 29, 1985, Daubert and Sentry Insurance Company, the worker's compensation carrier, instituted this action, seeking a declaration that Twilley was "not entitled to any further or additional compensation benefits" as compensation for his injury. Twilley counterclaimed, seeking further benefits and alleging: "On or about July 15, 1985, Twilley attempted to return to work with Daubert; however, Daubert and Sentry constructively terminated Twilley's employment in retaliation for Twilley having initiated an action to recover worker's compensation benefits." He claimed he was wrongfully discharged and asked for both compensatory and punitive damages.
Upon agreement of the parties, the claims relating to worker's compensation benefits were dismissed, and the only claim upon which trial proceeded was Twilley's claim for retaliatory termination. The trial judge had previously granted Sentry's motion for summary judgment on the retaliatory discharge claim.
The case was tried before a jury, the trial commencing on June 9, 1987.
At the trial, Twilley presented evidence that he claimed showed that he was willing and able to return to work on July 15, 1985, and that Daubert "constructively terminated" him by refusing to allow him to return to work.
Daubert presented evidence that showed that Twilley was still receiving worker's compensation benefits on July 15, 1985, and that the purpose of the July 15th meeting was to discuss Twilley's return to work in light of his recent evaluation by a doctor, who had seen him at the request of the compensation carrier.
Daubert also presented evidence that showed that its policy on July 15, 1985, was that an employee could not return to work without a medical release that did not contain any restrictions, and that Twilley did not meet this criterion. Daubert also presented evidence that Twilley was treated as an employee by it after the July 15th meeting.
As can be seen, the evidence was conflicting on whether Twilley was actually "terminated," within the meaning of § 25-5-11.1. Twilley contends, of course, that he only had to show he was "constructively terminated."
The events that transpired are, to say the least, unusual. From a review of the record, it appears to us that the jury, during its deliberations, asked the Court to instruct them again on what constituted "constructive termination". They then returned a general verdict in favor of the plaintiff for $26,000, but there is a sharp dispute between the parties as to whether the trial court actually accepted this verdict.
The jury had returned to the courtroom and asked the judge to instruct them again on "constructive termination." When they retired to the jury room, the following occurred, according to the record:
"(Jury retires back to the jury room, 11:13 a.m.)
"MR. CLARK: I want this on the record.
"THE COURT: I've submitted two interrogatories to the jury. The first one being, `Do you find that the plaintiff was terminated?' and the jury has answered the question, `Yes, constructively terminated.' And the second beingthe second interrogatory being, `If yes, was that termination solely because the plaintiff instituted or maintained an action against his employer to recover workmen's compensation benefits?' The answer to that question being, `No, there were other contributing factors according to the evidence presented.' It's dated *1366 June 12, 1987. And its signed by L.W. Smith, the foreman.
"And along with that, they returned their previous question. And they had they had a question. By the way, I don't know whether y'all know this or not. I meant to tell you.
"They had earlier asked ... a question about constructive termination. I have brought them back and answered their question. And then they sent back No. 2, `Why is it compulsory for the jury to answer those questions since the decision has been rendered?' And I sent Eric back with a note because I wanted them to answerbecause I required that the questions be answered, the interrogatories be answered.
"So they sent back their note with those two questions on it and a verdict form of $26,000.
"What I'll do is just let them make a report and let them go is what I'm going to do.
"I can'tI have to enter a judgment for the defendant notwithstanding the verdict under the circumstances. That's what I'm caught with. Thethat's what I'm going to do.
"MR. NORTON: Let me object to the use of the interrogatories without any let me collect my thoughts.
"THE COURT: Yeah, go ahead and think about it.
"MR. NORTON: Your Honor, I object to the use of these interrogatories since in the jury charge conference, it was my understanding that you were not going to use special interrogatories, and to use those interrogatories only after the verdict had been rendered.
"You know, in order to cure any defects, you've obviously created an appealable issue no matter how it goes.
"The jury has rendered a verdict that essentially states that the motivating reason was this action that the plaintiff took. I would request at least they be allowed to have some sort of modifying instructions so that they understand the importance of what has been asked to them. Solely means nothing more than the motivating reason. They would have done nothing other than to say that there [was] other evidence presented, obviously.
"It was a dispute, but they made their decision.
"THE COURT: Well, yeah, I think they did too. And I'm going to do what I said I was going to do.
"MR. NORTON: It's going to go up anyway.
"THE COURT: It's a very frustrating case. Well, it ought to go up, you know. You need some answers.
"Bring them on back and line them up at the rail, Eric.
"(Jury lined up against the rail, 12:09 p.m.)
"THE COURT: Okay. Mr. Smith, I understand that you're the foreperson of the jury; is that correct?
"JUROR SMITH: Yes, sir.
"THE COURT: And you've reached a verdict. And also, I sent back to you a couple of what we call interrogatories which you've answered.
"So would you read to us, please, your verdict, and the questions and answers to those two interrogatories.
"JUROR SMITH: The verdict first?
"THE COURT: Either way. That's fine.
"JUROR SMITH: I'll read this one here first.
"THE COURT: All right, sir.
"JUROR SMITH: The question, `Do you find that the plaintiff was terminated. Yes, constructively terminated.'
"`If yes, was that termination solely because the plaintiff instituted or maintained an action against his employer to recover worker's compensation benefits?'
"Our answer, `No, there were other contributing factors according to the evidence presented.'
"THE COURT: All right, sir. Now your verdict, please, sir.
"JUROR SMITH: The verdict of Twilley against Daubert Coated.
"`We, the jury, find for the plaintiff against the defendant and assess the *1367 plaintiff's damages in the sum of $26,000.'
"THE COURT: All right, sir. Now, Mr. Holt, I'm going to just sort of start with you and go down the line, and, please, consider that I'm asking each of you this question as I go down the line. And the question is going to be, is this your verdict? And what I'm looking for really is an answer to three things. One, is your answer to the interrogatories what your foreperson has indicated to me, and then is the money verdict your verdict also?
"So, I'm, in effect, asking you to tell me yes or no is this your verdict in the sense of the three things?
"So starting with you, please sir, is this your verdict?
"(All jurors polled indicated in the affirmative.)"
Twilley filed a motion to strike the interrogatories that the trial judge had propounded to the jury, and the trial court granted his motion, and entered the following order:
"The court was called upon to consider this morning a motion by Marvin Twilley, characterized in the trial of this case as plaintiff, to strike and exclude interrogatories and jury's answers thereto and also to reconsider this court's order granting judgment notwithstanding the verdict, in which the court entered a judgment in behalf of Daubert Coated Products, Inc., styled as defendant.
"After hearing argument from counsel, the court is of the opinion that the Motion to Strike and Exclude Interrogatories and Jury's Answers thereto should be and [it] hereby is granted.
"The court's earlier order granting judgment for defendant, Daubert, notwithstanding the jury's verdict for plaintiff, Marvin Twilley, not having been based upon the jury's answers to the interrogatories propounded them, but rather on the court's conviction that it should have granted defendant's motion for directed verdict, the motion for reconsideration is hereby denied.
"DONE and ORDERED this the 31st day of July, 1987."
Our standard of review of a JNOV is well settled. A motion for JNOV should be denied if there is any conflict in the evidence for the jury to resolve, and the existence of such a conflict is to be determined by the scintilla rule. Handley v. City of Birmingham, 475 So.2d 1185, 1186 (Ala.1985); Elrod v. Ford, 489 So.2d 534, 537 (Ala.1986). On review of a JNOV, the evidence must be viewed in a light most favorable to the nonmoving party. Wadsworth v. Yancey Bros. Co., 423 So.2d 1343, 1345 (Ala.1983).
The trial judge by granting JNOV, held that, as a matter of law, there was not a scintilla of evidence to support Twilley's contention that his worker's compensation claim was the sole reason for his termination as required by the statute. The effect of this ruling was a holding was that there was no conflict in the evidence for the jury to resolve.
Viewing the evidence in a light most favorable to Twilley, we find at least a scintilla of evidence that Twilley's filing of a worker's compensation claim was the sole cause of his termination. Like the trial judge, we could not consider the jury's answer to the interrogatories in making this determination.
Our determination that the trial judge erred in granting the JNOV is based upon our interpretation of what the legislature intended when it authorized an employee to sue for his or her wrongful termination.
When this Court did not carve out a public policy exception to the "employment at will" doctrine in Meeks v. Opp Cotton Mills, 459 So.2d 814 (Ala.1984), the legislature passed what is carried in the Code as § 25-5-11.1. Because this was remedial legislation, intended to prevent an employee's termination "solely because the employee [had] instituted or maintained [an] action against the employer to recover worker's compensation benefits," we apply the rule that the statute is to be construed liberally to effect its purposes, Ex parte Wright, 443 So.2d 40 (Ala.1983).
In construing the retaliatory discharge statute, we must determine what *1368 the legislature intended when it used the words "termination" and "solely." In this particular case, the definition of those two words is especially important. We are of the opinion that, because the legislation is remedial, the word "termination" in the statute is broad enough to include a "constructive termination."
The legislature's use of the word "solely," however, presents a more difficult question. While we cannot accept Twilley's argument that his burden of proof "should be determined in accordance with the general law of torts utilizing proximate cause analysis to fashion a simple `but for' test for the jury to determine the `sole' cause of a plaintiff's termination," we do not believe that the legislature intended that an employer is entitled to a directed verdict if the employer presents any evidence that the termination was not because of the employee's instituting or maintaining an action to recover worker's compensation benefits.
Twilley cites several cases in his brief that involve wrongful termination as a result of filing a worker's compensation claim. They are: Wiedower v. ACF Industries, Inc., 715 S.W.2d 303 (Mo.App.1986); Smith v. Piezo Technology & Professional Administrators, 427 So.2d 182 (Fla.1983); Clifford v. Cactus Drilling Corp., 109 Mich.App. 776, 312 N.W.2d 380 (1981) rev'd, 419 Mich. 356, 353 N.W.2d 469 (1984); Judson Steel Corp. v. Worker's Compensation Appeals Board, 22 Cal.3d 658, 150 Cal.Rptr. 250, 586 P.2d 564 (1978); and Santex, Inc. v. Cunningham, 618 S.W.2d 557 (Tex.Civ.App.1981).
We agree with Daubert that these cases are distinguishable.
In Wiedower, the wrongful termination statute did not contain the word "solely"; rather, it required only that the employee be terminated "as a direct result" of filing a worker's compensation claim. 715 S.W.2d at 305.
In Piezo Technology, the Florida statute did not require that the termination be "solely" for filing a worker's compensation claim. Rather, the statute broadly prohibited the discharge or intimidation of an employee "by reason of such employee's valid claim for compensation." 427 So.2d at 183.
The Clifford decision did not involve a statutory wrongful termination claim; rather, the court found that it was a violation of public policy to allow the termination of an employee because of absences resulting from a work-related injury.
The statute in Judson Steel also did not contain the word "solely." The California statute broadly prohibited any discrimination against an employee who was injured in the course and scope of his employment. 22 Cal.3d at 661, 150 Cal.Rptr. at 251, 586 P.2d at 565.
Finally, the Santex case involved the wrongful termination of an employee for filing a worker's compensation case. The employer requested a special interrogatory or a charge stating that it would be liable only if the jury found that the employee was discharged "solely" for filing a worker's compensation case.
The Texas statute prohibited the discharge of, or discrimination against, any employee because the employee had filed a worker's compensation case in good faith. The court rejected the employer's requested instruction, stating:
"We do not agree with [employer] that [employee] has the burden of establishing that he was discharged `solely' because he took steps to collect Worker's Compensation benefits. In our opinion, such a construction reads something into the statute that is not there. We believe that the clear intent of the statute is that an employer may not use the filing of a Worker's Compensation claim as a reason to discharge or otherwise discriminate against an employee even if there are other reasons. [The employer] contends that the employee has not established the essential element of discrimination unless he establishes that he (the employee) was discharged solely because he took steps to collect Worker's Compensation benefits. We cannot see the validity of this argument because the statute says: `No person may discharge *1369 or in any other manner discriminate against any employee ____., By the use of these words the Legislature obviously meant that the `discharging' of an employee was a `manner of discrimination' against such employee."
Id., 618 S.W.2d at 559.
The Santex case graphically shows why this Court should not accept the interpretation of the word "solely" that Daubert advances. In order to ascertain what the legislature did intend, we have reviewed cases construing the word "solely" in a remedial statute, which we consider is similar. The Rehabilitation Act of 1973 prohibits discrimination against a person "solely by reason of his handicap."
The United States Court of Appeals for the Second Circuit described a plaintiff's burden of proof under that Act, as follows:
"[A]lthough the plaintiff has the ultimate burden of proving by a fair preponderance of the evidence that the defendant discriminated against him on the basis of an impermissible factor, he may establish a prima facie case by proving that he applied for a position for which he was qualified and was rejected under circumstances indicating discrimination on the basis of an impermissible factor. The burden then shifts to the defendant to rebut the presumption of discrimination by coming forward with evidence that the plaintiff was rejected for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for impermissible discrimination."
Doe v. New York University, 666 F.2d 761, 776 (2d Cir.1981).
The Tenth Circuit Court of Appeals describes a plaintiff's burden as follows:
"1) The plaintiff must establish a prima facie case by showing that he was an otherwise qualified handicapped person apart from his handicap, and was rejected under circumstances which gave rise to the inference that his rejection was based solely on his handicap.
"2) Once plaintiff establishes his prima facie case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is[,] one who is able to meet all of the program's requirements in spite of his handicap, or that his rejection from the program was for reasons other than his handicap.
"3) The plaintiff then has the burden of going forward with rebuttal evidence showing that the defendants' reasons for rejecting the plaintiff are based on misconceptions or unfounded factual conclusions, and that reasons articulated for the rejection other than the handicap encompass unjustified consideration of the handicap itself."
Pushkin v. Regents of the University of Colorado, 658 F.2d 1372, 1387 (10th Cir. 1981).
We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was "terminated" because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination.
We are mindful that the jury, in this case, did find, by answer to the special interrogatory, that Twilley was not terminated "solely" because he sought to recover worker's compensation benefits, but the trial judge affirmatively stated that he did not consider that answer in granting the judgment notwithstanding the verdict.
Daubert contends on its cross-appeal that Twilley's claim does not fall under the wrongful termination statute because § 25-5-11.1 did not become effective until February 1, 1985. Twilley's injury occurred on November 7, 1984, and Daubert contends that this is the date that should control for determining when Twilley's cause of action arose under § 25-5-11.1. Section 14 of Act 85-41, 1984-85 Ala. Acts (Second Special Session, 1984-85), states:
"This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming *1370 a law, provided it shall have no effect whatsoever with respect to the right of any injured employee to bring an action with respect to or upon any cause of action which arose or accrued prior to February 1, 1985. Provided, further, it shall have no effect on and shall not apply to any accident or exposure to injurious condition occurring before the effective date of this Act."
The act became law on January 9, 1985, and, thus, that is its effective date.
The last sentence of the effective date provision obviously refers to claims for workman's compensation benefits. The major thrusts of the act are to change co-employee liability and to change workman's compensation benefits. Thus, the two different "effective date" provisions of § 14 can be reconciled by inferring that the act does not change benefits with respect to workplace injuries occurring prior to its effective date of January 9, 1985, and that it does not affect any cause of action arising or accruing prior to February 1, 1985, such as a co-employee action or an attempted wrongful termination action. Twilley's cause of action for wrongful termination accrued on July 15, 1985, the date he alleges that he was wrongfully terminated. Even though he was injured before February 1, 1985, he had no cause of action until he was allegedly wrongfully terminated, which was after February 1, 1985. Consequently, his action did not "accrue" prior to the effective date of the act.
The other issues Daubert raises on its cross-appeal either have been addressed by our discussion of Twilley's appeal or may not arise on a retrial of this case, and thus, need not be reached here. The trial court's judgment, insofar as it relates to Daubert's cross-appeal, is affirmed.
In view of the foregoing, and the state of this record, we hold that the trial judge erred in granting a judgment for the defendant Daubert notwithstanding the verdict, and we reverse and remand the cause to the trial court, with instructions to grant the plaintiff a new trial.
86-1503 REVERSED AND REMANDED, WITH INSTRUCTIONS.
86-1554 AFFIRMED.
JONES, ALMON, ADAMS, HOUSTON and STEAGALL, JJ., concur.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
In his application for rehearing, Twilley asked this Court to order the trial court to reinstate the jury's verdict of $26,000.00 instead of remanding for a new trial. He points out that neither he nor Daubert ever requested a new trial in the court below. However, in view of the state of this record, as we pointed out on original deliverance, and the fact that the jury's verdict, in view of their answer to the special interrogatories, is tainted, we believe that justice demands that a new trial be ordered. See Gordon v. Halstead, 283 Ala. 578, 219 So.2d 629 (1969); Ala.Code 1975, § 12-22-70; Rule 1, A.R.A.P.
Daubert also states that we did not address its contention that Twilley is not entitled to a jury trial on remand. We did not. We now address it. This Court has said:
"The test for determining when one has a right to a trial by jury is set out in the committee comments to Rule 38 [Ala.R. Civ.P.] as follows: `if an issue is of a sort which heretofore would have been tried to a jury, then the party has a constitutional right ... to have it tried to a jury under the merged procedure.'"
Cumens v. Garrett, 294 Ala. 535, 536, 319 So.2d 665 (1975).
Twilley's cause of action under the wrongful termination statute is a tort action. See Caraway v. Franklin Ferguson Mfg. Co., 507 So.2d 925 (Ala.1987). Thus, an action for wrongful termination is "of a sort" that has traditionally been tried to a jury, even though it may have arisen out of a workman's compensation factual setting.
OPINION EXTENDED. APPLICATIONS OVERRULED.
*1371 JONES, ALMON, ADAMS, HOUSTON and STEAGALL, JJ., concur.