The plaintiff Milley L. Bullion appeals from a summary judgment in favor of the defendant JMBL, Inc., doing business both as Foodland Discount Foods and as L L Services, Inc. Bullion's action alleged a retaliatory discharge in violation of Ala. Code 1975, § 25-5-11.1, and disability discrimination in violation of 42 U.S.C. § 12101-12213 (1994).
In February 1990, JMBL employed Bullion on a part-time basis as a cashier at a grocery store. Later, it transferred her to the produce department of its store, where Bullion suffered an on-the-job injury to her back on April 25, 1990. As a result of her injury, Bullion was unable to return to work until April 1992. She received a permanent partial impairment rating of approximately 7 1/2% to 18%. When she returned to work, her physician restricted her hours of work and restricted her lifting for six weeks. Bullion was later released from all work restrictions and was permitted to work eight-hour shifts. She requested that a stool be placed near the cash register in order to accommodate her need to alternate between standing and sitting. JMBL granted that request. Later, she was put on part-time status as a cashier, and she worked on that basis until she was laid off in April 1993.
On July 29, 1993, Bullion sued JMBL, alleging that she had been terminated solely for maintaining an action against JMBL to recover workers' compensation benefits, and that her termination violated Ala. Code 1975, § 25-5-11.1. On November 9, 1993, Bullion amended her complaint, contending, alternatively, that her termination violated the "Americans with Disabilities Act of 1990" (hereinafter referred to as the "ADA"), 42 U.S.C. § 12101-12213 (1990). On September 19, 1994, the trial court entered a summary judgment in favor of JMBL. Bullion appeals.
On a motion for a summary judgment, the movant has the burden to make a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. See, also, Willingham v. UnitedIns. Co. of America, 642 So.2d 428 (Ala. 1994), and the cases cited therein. Until the moving party has made a prima facie showing that there is no genuine issue of material fact, the opposing party has no duty to establish a genuine issue of material fact. Willingham, supra. This case was filed after June 11, 1987; accordingly, the "substantial evidence rule" applies to the ruling on the motion for summary judgment. In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence supporting his position and creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Betts v. McDonald'sCorp., 567 So.2d 1252 (Ala. 1990). "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
Marlon Wilson, the JMBL store manager, testified that after Bullion returned to work in April 1992, she began complaining about not being a full-time employee. Wilson stated that he was unable to schedule Bullion for more hours because her personal schedule conflicted with the hours he needed her to work and because he did not have a full-time position available. Wilson testified that his chief complaint with Bullion after she returned to work was that she wanted to work full-time but wanted flexible hours during the week and wanted weekends off.
Wilson stated that on several occasions he had complained to Larry Willis, an employee of L L Services, who supervised the managers of JMBL, about the scheduling problems he was experiencing with Bullion. Willis corroborated Wilson's testimony, stating that he had advised Wilson to try to work around the problem he was having with Bullion concerning her scheduling difficulty.
Bob Love, the president of JMBL, and John Maples, the human resources manager for a company that provides management support to JMBL, testified that, because the *Page 836 
store was preparing to close and to open later in a larger location, Bullion was selected to be laid off because JMBL needed to reduce the number of its part-time employees during the transition. Apparently, the reduction in part-time employees was undertaken in order to allow full-time employees to maintain, at a minimum, 40 hours per week.
On April 18, 1993, Love advised Bullion that she was being laid off effective April 19, 1993. On April 21, 1993, Bullion reapplied for employment with JMBL, stating in her employment application that she preferred full-time work on the day shift and that she was available to work Monday through Friday but not on Saturdays or Sundays. Maples testified that Bullion was not rehired because of these stipulations in her employment application and because of the scheduling problems JMBL had previously had with her.
Love stated that, as president of JMBL, he made the decision to lay off Bullion and that his decision was based on the fact that Wilson and Willis had reported to him that Bullion had a bad attitude, was difficult to work with, was loud and abusive, and did not care about JMBL's customers. Additionally, the court heard testimony indicating that Bullion had made racist remarks to customers, was obnoxious, and was unruly while at work. The decision to lay off Bullion, Love testified, was made while reviewing the need to reduce the number of employees.
However, Bullion contends that Love terminated her employment because she had filed a workers' compensation claim based on her injury and because this injury disabled her and required her to use a stool, i.e., a special accommodation. As evidence that she was wrongfully terminated, Bullion testified that within five days after she had been laid off she saw a sign in JMBL's window advertising that it was accepting employment applications; that JMBL made no complaints about her work performance until after she returned in April 1992; and that JMBL rejected her application for re-employment.
Further evidence of a wrongful discharge, she contends, is Wilson's testimony that JMBL started taking applications for new employees two weeks after Bullion was "laid-off for lack of work" and Love's testimony that 15 new employees were hired within 6 weeks of Bullion's termination.
Section 25-5-11.1 prohibits an employer from terminating an employee because the employee instituted or maintained an action to recover workers' compensation benefits. In an action brought under § 25-5-11.1, Bullion could establish a prima facie case of retaliatory discharge by proving that she was terminated because she sought to recover workers' compensation benefits. Overton v. Amerex Corp., 642 So.2d 450 (Ala. 1994);Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364
(Ala. 1988). The burden would then shift to JMBL to present evidence that Bullion was terminated for a legitimate reason, whereupon Bullion then would have to prove that the reason given by JMBL was not true but was a pretext for an otherwise impermissible termination. Overton, supra; Twilley, supra.
If JMBL supported its summary judgment motion with evidence of a legitimate reason for terminating Bullion, then Bullion had to refute that showing with her own prima facie case; of course, Bullion had no burden to produce evidence before trial unless JMBL made and properly supported a motion for summary judgment. Overton, supra; Culbreth v. Woodham Plumbing Co.,599 So.2d 1120 (Ala. 1992). If JMBL's showing of a legitimate reason is conclusive enough to establish that "there is no genuine question as to [that] material fact and [that] the moving party [JMBL] is entitled to a judgment as a matter of law," Rule 56(c), Ala.R.Civ.P., then Bullion would have to produce evidence to refute that showing. Overton, supra; Culbreth;
supra.
Bullion presented evidence that, if believed, would make a prima facie case of retaliatory discharge. In turn, JMBL offered evidence tending to show that Bullion's discharge was a result of a reduced work load and Bullion's request for flexible hours and a full-time position. This evidence shifted the burden to Bullion. She contends that JMBL's reason for her termination was a pretext, because JMBL interviewed and *Page 837 
hired additional employees after she was laid off.
We conclude that Bullion failed to present substantial evidence creating a genuine issue of material fact as to whether the reasons offered by JMBL for her termination were a pretext for an impermissible termination. Accordingly, the trial court properly entered the summary judgment in favor of JMBL on Bullion's claim of retaliatory discharge in violation of § 25-5-11.1.
Additionally, Bullion contends that she was terminated in violation of the ADA; she says she was terminated because she is disabled. Under the ADA, a person with a "disability" is a person with a physical or mental impairment that "substantially limits" one or more of that person's major life activities; a person with a record of such an impairment; or a person regarded as having such an impairment. 42 U.S.C. § 12102
(2)(A)-(C) (1994). To be considered "disabled" under the ADA, Bullion must prove that her condition is a substantial impairment to a "major life activity." 29 C.F.R. § 1630.2(g)(1) (1994). A "major life activity" is defined as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."29 C.F.R. § 1630.2(i) (1994). In regard to the major life activity of working, a person with an impairment that "substantially limits" an activity is a person who, because of an impairment, is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1994). However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1994).
Under the statute, Bullion must carry the initial burden of establishing a prima facie case of discrimination. This may be done by showing: (1) that she is a member of a protected class; (2) that adverse employment action was taken against her; (3) that she was replaced by a person outside the protected class; and (4) that she was qualified for the position for which she was rejected. Carter v. City of Miami, 870 F.2d 578 (11th Cir. 1989). Once established, the prima facie case would serve as a rebuttable presumption that JMBL unlawfully discriminated against Bullion and would require JMBL to present a legitimate, nondiscriminatory reason for the action. Pace v. Southern Ry.,701 F.2d 1383 (11th Cir. 1983), cert. denied, 464 U.S. 1018,104 S.Ct. 549, 78 L.Ed.2d 724 (1983). In other words, "[i]t may be a defense to a charge of disparate treatment that the challenged action is justified by a legitimate, nondiscriminatory reason." 29 C.F.R. § 1630.15(a) (1994).
There is no dispute that Bullion has a physical impairment, or that this impairment to some degree affects her ability to stand and sit. Further, the applicable Federal guidelines state that standing and sitting are major life activities. See 29 C.F.R., Appendix to Part 1630 — "Interpretive Guidance on Title I of the Americans with Disabilities Act, Section 1630.2(i), Major Life Activities." Therefore, Bullion presented evidence that, if believed, established that she was disabled; that she was laid off; that JMBL replaced her with a person that was not disabled; and that she was qualified for a position as cashier. However, as indicated above, JMBL established a legitimate, nondiscriminatory reason for the action, and Bullion presented no substantial evidence to indicate that the reasons offered by JMBL for her termination were a pretext.
Accordingly, the trial court properly entered the summary judgment in favor of JMBL on Bullion's claim of alleging a violation of the ADA.
AFFIRMED.
HORNSBY, C.J., and ALMON, HOUSTON and INGRAM, JJ., concur. *Page 838