RICHARD L. HOLMES, Retired Appellate Judge.
Joe Bryant, Jr., was employed by West Alabama Health Services, Inc. (West Alabama), as a van driver. Bryant, who transported dialysis patients to the dialysis center for treatment, began his employment with West Alabama in December 1987, and his employment was terminated effective January 17, 1992.
Bryant requested hearings regarding his discharge, pursuant to the grievance and appeal process outlined in the policy manual for West Alabama and the Eutaw Medical Clinic Board (policy manual). After hearings before Bobby Armstead, the transportation director for West Alabama, on February 7, 1992, and before James Coleman, the executive director for West Alabama, on March 20, 1992, the original decision to terminate Bryant’s employment was not altered or changed.
Bryant filed a complaint in July 1992, wherein he alleged that he was wrongfully, illegally, and unjustifiably terminated from his employment with West Alabama. Bryant alleged that West Alabama failed to follow the provisions of the policy manual when it terminatéd his employment. Bryant cited numerous examples of how West Alabama violated the provisions of the policy manual. He requested that a judgment be entered in his favor, ordering his reinstatement to his job with full back-pay and accrual of all benefits from January 17, 1992, to the date of his reinstatement. Bryant also requested that a judgment be entered in his favor, awarding $20,000 in compensatory damages, $20,000 in punitive damages, and all attorney fees allowable under the provisions of the policy manual.
A jury trial was held on September 16, 1994, and the jury returned a verdict in favor of Bryant and assessed damages at two weeks’ wages, plus his accrued vacation pay.
Bryant filed a motion for a new trial, which was denied by operation of law. See Rule 59.1, Ala.R.Civ.P.
Bryant appeals.
*943 In Ms first issue, Bryant contends that the jury verdict was contrary to the great weight of the evidence.
Bryant asserts that because the jury found in his favor, it must have believed that he was wrongfully terminated by West Alabama. Bryant contends that the jury erroneously assessed damages at two weeks’ wages, plus accrued vacation pay. He contends that the jury should have ordered that he be reinstated to his position with full back-pay and accrual of all benefits from January 17, 1992, to the date of his reinstatement because, he says, that would have returned him to the position he would have occupied if he had not been wrongfully terminated.
It is well settled that a presumption of correctness attaches to a jury verdict and that a judgment based upon a jury verdict will be reversed only if it appears to be plainly and palpably wrong. Brannon v. Webster, 562 So.2d 1337 (Ala.Civ.App.1990).
Our review of the record reveals the following pertinent facts: When Bryant received Ms payroll check on January 16, 1992, it contained a termination notice from Arm-stead, the transportation director. The January 16, 1992, termination notice stated:
“I have investigated several complaints pertaining to your absence from your specific job assignment. Based upon my investigation, I found the allegations to be true. Falsification of attendance records (time sheets) is a violation of federal and state law. An employee does not have the authority to subcontract his or her job.
“In view of the above, I find it to be in the best interest of this agency to terminate your employment effective January 17, 1992.”
In paragraph 3 of the “Office Procedures” portion of the policy manual, we find the following pertinent statements:
“When ... not reportmg for work, a reason should be given in the explanation column of the time sheet. Time sheets are to be signed by both individuals and a designated supervisor.”
Paragraphs 5 and 6 of the “Office Procedures” portion of the policy manual state, in pertinent part:
“5. Should an employee ... require time off for any reason, he/she must secure approval from his supervisor or someone designated by the Executive Director....
“6. If an employee is unable to report to work unexpectedly, he/she will call the appropriate supervisor or time sheet keeper and give the reason for the absence.”
Both Bryant and Armstead testified regarding the procedure wMch was to be followed in the event that an employee had to be absent from work. The employee was to notify the central office when he found it necessary to be absent from work. Sick leave or vacation time to cover the absence was approved through the central office. A substitute driver was contacted to cover the absent employee’s route, and the substitute driver turned m a time sheet to the central office and was compensated by West Alabama.
At trial, Bryant admitted that he had received wages from West Alabama on at least two occasions when he was not present to perform the duties of his employment— transporting dialysis patients for treatment — and that he was not on sick leave or vacation on these occasions. Bryant also admitted that he personally had paid someone else for transporting the dialysis patients on these occasions and that the central office was never notified of Ms absence from work. Bryant stated that he did not dispute these facts at either the February 7, 1992, hearing or the March 20, 1992, hearing.
At the time that Bryant’s employment was terminated, West Alabama had approximately 40 full-time drivers and between 30 and 35 part-time drivers, who covered 8 counties.
Armstead testified that in approximately December 1991, he received a complaint concerning Bryant’s absence from his assigned duties. Armstead stated that after investigating the matter, he determined that at the time that Bryant was absent from Ms assigned duties, he had sufficient sick leave and/or vacation time accrued; that Bryant had failed to notify the central office of Ms *944 absence from his assigned duties; and that Bryant had personally paid substitute drivers to cover his route.
Armstead testified that after he verified that the complaint was true, he communicated his findings to Coleman, the executive director. Armstead further testified that Bryant’s failure to comply with the established procedure of contacting the central office to request leave time or vacation time when the employee found it necessary to be absent from work was deemed a severe offense. Consequently, the decision was made to issue a termination letter to Bryant.
The “Disciplinary Schedule” portion of the policy manual listed the disciplinary actions as follows: (1) oral reprimand, (2) written reprimand, (3) probation, (4) demotion, (5) suspension, and (6) dismissal. Dismissal was defined as the “termination of employment either because of [the] seriousness of the offense or because [the] employee has failed to respond to previous disciplinary actions.” (Emphasis added.)
The “Employee Conduct” portion of the policy manual also contains the following pertinent statement:
“When [West Alabama] finds it necessary to terminate an employee (except during the probationary period or for cause), said employee shall be given at least two weeks’ notice of such termination, plus accrued vacation time.”
At trial, Bryant contended that because this was a first-time offense, under the provisions of the policy manual West Alabama was required to give him an oral reprimand. He also contended that if West Alabama terminated his employment, he was entitled to a two-week notice of termination.
At trial, Armstead contended that because this was a severe offense, West Alabama was justified in proceeding directly to termination of employment, and that a two-week notice of termination was not required.
We would note that a copy of the policy manual was introduced into evidence at the trial.
In light of the foregoing, the jury could have determined that while West Alabama did not wrongfully terminate Bryant’s employment, a two-week notice of termination was required. Consequently, we cannot find that the jury verdict was contrary to the great weight of the evidence or plainly and palpably wrong.
In additional issues raised on appeal, Bryant contends that the trial court improperly refused to allow him to show that the reasons given by West Alabama for its termination of his employment were a pretext and that the trial court improperly restricted his cross-examination of Armstead concerning the audit of time sheets.
Our review of the record reveals that these two issues can be directly related to Bryant’s contention in his opening statement at trial that this was a retaliatory discharge case. When West Alabama objected during the course of Bryant’s opening statement, the jury was sent to the jury room and the attorneys argued their clients’ positions before the court.
West Alabama argued that the complaint in the present case, which was filed in 1992, contained no allegations that Bryant’s discharge was retaliatory because, as Bryant claims, he contacted the Department of Labor to report that he was making less than minimum wage. West Alabama pointed out that Bryant had not amended his complaint and that during the discovery period there had been no reference, either oral or written, concerning retaliatory discharge or any investigation conducted by the Department of Labor. West Alabama maintained that the first time that it was alleged that a Department of Labor investigation resulted in the retaliatory dismissal of Bryant was during Bryant’s opening statement at trial.
Bryant argued, pursuant to Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364 (Ala.1988), that once West Alabama asserted its reasons for the termination of his employment, then the burden shifted to Bryant to demonstrate that the reasons given for his dismissal were pretextual.
After listening to the arguments of counsel and reviewing the complaint, the trial judge sustained West Alabama’s objection to the opening statement and instructed Bryant *945 that he was not to refer to an investigation conducted by the Department of Labor because it had nothing to do with the allegations raised in the present case.
We have reviewed the complaint, and it appears that'Bryant’s main contentions center around the fact that West Alabama did not give him a two-week notice of termination or compensate him for his accrued vacation time and around the fact that Bryant received no oral reprimand prior to the termination of his employment. The complaint contains no allegations that the termination of Bryant’s employment was a retaliatory dismissal or that the Department of Labor had conducted an investigation after receiving a complaint from Bryant about his wages.
Under Rule 8, Ala.R.Civ.P., a pleading must give the defendant fair notice of the claim which he is called to defend and the grounds upon which the claim rests. Archie v. Enterprise Hospital & Nursing Home, 508 So.2d 693 (Ala.1987); Mitchell v. Mitchell, 506 So.2d 1009 (Ala.Civ.App.1987). The factual details of the claim will be provided during the course of the discovery process. Mitchell, 506 So.2d 1009.
In the present ease neither the pleadings nor the discovery process gave West Alabama notice of Bryant’s allegations that a Department of Labor investigation resulted in the retaliatory dismissal of Bryant.
Further, we would note that Bryant relied on Twilley, 536 So.2d 1364, both at trial and on appeal. This reliance is misplaced. In Twilley, the employee had filed a counterclaim, alleging that the employer had constructively terminated his employment in retaliation for his having filed a claim for workers’ compensation benefits. Our supreme court stated the following in Twilley, 536 So.2d at 1369:
“We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was ‘terminated’ because he sought to recover worker’s compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination.”
The employee’s counterclaim in Twilley alleged retaliatory termination, while Bryant, until his opening statement at trial, failed to allege that the termination of his employment was a retaliatory dismissal or that the Department of Labor had conducted an investigation after receiving a complaint from him about his wages.
In light of the above, we cannot find that the trial court committed reversible error when it declined to allow Bryant to elicit testimony regarding a Department of Labor investigation which apparently involved an audit of West Alabama’s time sheets.
Finally, Bryant contends that the trial court improperly instructed the jury on the law of employment in Alabama. We would note that the trial court instructed the jury that Alabama is an employment-at-will state and that employment can be terminated by either party with or without cause or justification.
Bryant does not dispute the truth of the foregoing statement. However, Bryant contends on appeal that the jury instructions were incomplete because, he says, the jury was not instructed that provisions in a policy manual or employee handbook can be sufficient to create a binding unilateral employment contract, which can modify the employment-at-will relationship. See Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987).
We would note that, at trial, Bryant objected to the “jury charge on the definition and application of [the] employee-at-will doctrine.” Bryant cited the following as grounds for his objection: “We think [that] the employee-at-will doctrine, as defined by the court, applies to private employers as opposed to public or quasi-public employers.” There was no mention made of Bryant’s contention that the policy manual modified the employment-at-will relationship.
Rule 51, Ala.R.Civ.P., states, in pertinent part:
*946 “No party may assign as error ... the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection.”
The grounds for the objection must be stated with enough specificity or precision to give the trial court sufficient opportunity to correct the instruction and to preserve the error for appellate review if the trial court does not correct the instruction. American Cast Iron Pipe Co. v. Williams, 591 So.2d 854 (Ala.1991).
We cannot place the trial court in error for its refusal to correct the jury instructions for the grounds stated at trial.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
All the judges concur.