ROBERTSON, Presiding Judge.
Dorothy Chalus filed a complaint against her former employer, Decatur Country Club, Inc., in the Morgan County Circuit Court, alleging retaliatory discharge. Chalus sought compensatory and punitive damages, interest, and costs.
After Chalus had presented her ease at trial, the Country Club moved for a directed verdict. The trial court directed a verdict in favor of the Country Club. The trial court found that Chalus had established a prima facie case of retaliatory discharge, but that the Country Club had “proffer[ed] a legitimate business reason for [Chalus’s] discharge: budget cutbacks resulting from less than anticipated revenue that required a decrease in the number of kitchen employees on [Chalus’s] shift.”
Chalus appeals, raising one issue: whether the trial court erred in directing a verdict in favor of the Country Club.
Our supreme court has held:
“A directed verdict is proper (1) where the nonmoving party has failed to present substantial evidence regarding some element essential to his claim, or (2) where there is no disputed issue of fact upon which reasonable persons could differ. Rule 50(a), Ala.R.Civ.P.; John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375, 376 (Ala.1990); Koch v. State Farm Fire & Cas. Co., 565 So.2d 226, 228 (Ala.1990); Dobbs v. Alabama Power Co., 549 So.2d 35, 36 (Ala.1989)....
“Whether the trial court erred in denying Driver’s directed verdict motion ‘is tested by a purely objective determination of whether the party having the burden of proof has produced [sufficient] evidence [to create a factual dispute] requiring resolution by the jury.’ Ex parte Oliver, 532 So.2d 627, 628 (Ala.1988). Because the trial court’s ruling on a directed verdict motion is based on an objective standard, and, thus, is not discretionary, review of such a ruling on appeal is de novo. Otis Elevator of Gadsden, Inc. v. Scott, 586 So.2d 200, 203 (Ala.1991), citing King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714 (Ala.1987).
Additionally, in reviewing the ruling on a motion for a directed verdict, this Court must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would have been free to draw. Wadsworth v. Yancey Bros. Co., 423 So.2d 1343,1345 (Ala.1982).”
Driver v. National Security Fire & Casualty Co., 658 So.2d 390, 392 (Ala.1995).
“[A]n employee may establish a pri-ma facie case of retaliatory discharge by proving that he was ‘terminated’ because he sought to recover worker’s compensation benefits, which would be an impermissible reason.” Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369 (Ala.1988). The burden then shifts to the employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the employee must prove that the reason was not true, but a pretext for an otherwise impermissible termination. Id.
The record reveals the following facts. Chalus began working for the Country Club as a day-shift grill cook on January 18, 1994. On March 25, 1994, Chalus was injured when the pastry cook took a rack out of the oven that subsequently fell on Chalus’s leg. Chalus reported her injury to the Country Club’s “front office.” On April 18, 1994, Chalus returned to her doctor, who released her to return to work the next day.
Chalus returned to work on April 19, 1994, and shortly after her shift began Chef Ronald Eugene Casey saw her working and expressed his surprise at seeing her. Casey told Chalus “we must talk”; shortly thereafter, Chalus was called into Casey’s office, where Casey and Carol Bradford, the Country Club’s general manager, were waiting for her. Bradford told Chalus that she was being “let go” because of “budget cuts.” Cha-lus testified that she asked Bradford and Casey if they were going to call her back to work when business picked up, and that in response Casey shook his head and said, “I don’t like doing this,” and she said that Bradford told her she could draw unemployment compensation. Chalus requested a letter stating that she would be called back to work *280 when business picked up; Bradford prepared and signed a letter to that effect.
Chalus was never contacted by the Country Club after April 19, 1994; however, Cha-lus later learned that the Country Club had hired new workers. She testified that she was not called about any job openings and that she would have accepted a job in the snack bar, a job as a waitress, or any other job because, at that time, she was the sole supporter of her husband and their two sons. Chalus looked for work at TCI in Huntsville; Amoco in Huntsville; Bradford Health Services in Madison; Decatur General Hospital; Huntsville Hospital; and several grocery stores, but she was unable to find work.
Casey testified that he is the executive chef at the Country Club and that he is in charge of all aspects of the food operation at the Country Club. He testified that the Country Club has a restaurant that serves lunch and dinner and a snack bar that is separate from the restaurant. Casey testified that Chalus had done a good job, that he had no complaints about her, and that she had gotten along with her co-workers.
Casey did not have any contact with Cha-lus while she was off work because of her injury. He testified that he did not have any specific discussions with Bradford before April 19, 1994, regarding the necessity of laying off someone because of budget cuts. Casey testified that he was very surprised to see Chalus on April 19, 1994, because he had assumed that she would not be returning to work. He also testified that he had decided to terminate Chalus because business was slow. Casey admitted that Chalus had asked if she would be called back to work if there were any openings, and that Bradford had written a letter stating that Chalus had been a good employee and that she would be considered for future employment.
Casey admitted that seniority was not a consideration when Chalus was terminated, that there was another employee who had been hired after Chalus, and that they had not terminated that employee because she had not missed three weeks of work as the result of a work-related injury. He also admitted that, after Chalus Svas terminated, the Country Club had hired 11 new people for various jobs, that Chalus was qualified for most of those jobs, and that Chalus had not been considered for any of the jobs. Casey testified that Chalus was not offered any of the 11 jobs because he did not think of her when he was hiring. He also admitted that when Chalus was terminated, the restaurant’s monthly income was increasing and that the restaurant’s monthly income had increased almost $20,000 from January to April 1994.
Bradford testified that she became the Country Club’s manager in March 1994, and that she and Casey had made the decision to terminate Chalus. She admitted that she had written a letter stating that Chalus had been laid off and that Chalus would be considered for other jobs. Bradford also admitted that Chalus had been terminated, not laid off, from her job. She testified that various jobs became available approximately three weeks after Chalus’s termination, that Cha-lus was qualified for 11 of the jobs that became available, but that she had not considered Chalus for those jobs because she “didn’t think about it.” She admitted that of the 12 workers who had filed workers’ compensation claims against the Country Club only one was still employed by the Country Club.
Bradford testified that she had terminated Chalus because the restaurant’s lunch business had slacked off in February, March, and April 1994. However, Bradford admitted that the Country Club’s business records reflected that it had served 750 people for lunch in January 1994, 911 people for lunch in February 1994, 879 people for lunch in March 1994, and 824 people for lunch in April 1994. Bradford further admitted that the food operations had made approximately $10,000 over the estimated budget in April 1994.
Debra Nell Buford testified that she was hired by the Country Club on June 4, 1994, to be the grill cook in the snack bar and the kitchen, and that the Country Club had also hired four part-time employees to work in the snack bar.
Viewing the evidence in a light most favorable to Chalus, we conclude that Chalus pre *281 sented a prima facie ease of retaliatory discharge, that the Country Club presented substantial evidence of a legitimate reason for her termination, and that Chalus then presented substantial evidence from which a jury could infer that the Country Club’s stated reason was but a pretext and that in fact the Country Club had impermissibly terminated Chalus. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996); Alexander v. Jitney Jungle Stores, 673 So.2d 402 (Ala. 1995); Rickard v. Shoals Distributing, Inc., 645 So.2d 1378 (Ala.1994). Therefore, we conclude that the trial court erred in directing a verdict in favor of the Country Club.
The judgment of the trial court is due to be reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.