716 So.2d 1220 (1997)
Rick ROTHENBERGER
v.
CAST PRODUCTS, INC.
2961148.
Court of Civil Appeals of Alabama.
December 19, 1997.
Rehearing Denied January 23, 1998.
Certiorari Denied June 19, 1998.
*1221 Penny D. Hays of Alabama Work Injury Lawyers, P.C., Birmingham, for appellant.
John A. Wilmer and Shannon M. Smith of Wilmer & Shepard, P.A., Huntsville, for appellee.
Alabama Supreme Court 1970779.
HOLMES, Retired Appellate Judge.
Rick Rothenberger appeals from a summary judgment entered in favor of Cast Products, Inc., on Rothenberger's claim of retaliatory discharge. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Our review of the record reveals the following: On November 30, 1993, Rothenberger suffered an on-the-job injury while he was working in the line and scope of his employment with Cast Products, Inc. (employer). It is undisputed that Rothenberger immediately filed a "First Report of Injury" with the employer, in accordance with the Alabama Workers' Compensation Act. Thus, at the outset, we find that Rothenberger filed a workers' compensation claim. See Smith v. Dunlop Tire Corp., 663 So.2d 914 (Ala.1995).[1] On January 14, 1994, approximately two months later, the employer terminated Rothenberger's employment.
On May 24, 1995, Rothenberger filed a two-count complaint against the employer. In the first count, Rothenberger requested workers' compensation benefits. In the second count, Rothenberger alleged that he had been discharged from his employment in retaliation for filing a claim for workers' compensation benefits.
On June 26, 1995, the trial court severed the workers' compensation claim from the retaliatory discharge claim. We would note that Rothenberger and the employer ultimately entered into a workers' compensation settlement agreement, which expressly preserved Rothenberger's pending claim for retaliatory discharge. The trial court approved the settlement agreement.
On June 13, 1996, the employer filed a motion for a summary judgment; a narrative summary of the facts; the affidavit of its vice president, Mike Medlin; the deposition testimony of Medlin; and the deposition testimony of Rothenberger. Rothenberger responded with a brief in opposition, his deposition testimony, and the deposition testimony of Medlin.
On March 5, 1997, the trial court entered an order, granting the employer's summary judgment motion. Rothenberger filed a post-judgment motion, which the trial court denied.
Rothenberger appeals.
We note that in appropriate circumstances, the general rule under Alabama law is that an employee may be discharged from his employment, with or without cause or justification, *1222 for a good reason, a wrong reason, or no reason at all. Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala.1992). Section 25-5-11.1, Ala.Code 1975, provides an exception to this general rule, which states that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits...."See McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala.1991).
In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369 (Ala.1988), our supreme court stated the following in regard to a retaliatory discharge action filed pursuant to § 25-5-11.1:
"We hold that an employee may establish a prima facie case of retaliatory discharge by providing that he was `terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination."
Furthermore, in the context of a summary judgment motion filed by the employer in regard to a retaliatory discharge claim, our supreme court, in Culbreth, 599 So.2d at 1122 (Ala.1992), stated the following:
"[I]f the [employer] has supported a summary judgment motion with evidence of a legitimate reason for terminating the [employee], the [employee] must then refute that showing with his own prima facie case; of course, the [employee] has no burden to produce evidence before trial until the [employer] has made and properly supported a motion for [a] summary judgment. If the [employer's] showing of a legitimate reason is conclusive enough to establish that `there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law,' Rule 56(c), Ala. R. Civ. P., the [employee] would also have to produce evidence to refute that showing."
In the instant case the employer had the initial burden of showing that Rothenberger's employment was terminated for a legitimate reason. In support of its motion for a summary judgment, the employer offered the testimony of its vice president, Mike Medlin. Medlin's testimony established a prima facie showing that Rothenberger's employment was terminated because of his inferior work.
Medlin stated that shortly after Rothenberger was hired, he began to exhibit an inability to perform the duties associated with his job. Specifically, Medlin claimed that Rothenberger was not organized; he was unable to identify castings; he did not follow the daily production sheets, which indicated which castings were to be produced, the quantity to be produced, and the date on which they were to be shipped; and he had sent defective and/or unfinished castings to the shipping and receiving department. Medlin stated that he had on-going meetings with the plant manager regarding Rothenberger's job performance and that he had worked closely with Rothenberger for three weeks to help Rothenberger.
Rothenberger, on the other hand, contends that the reasons proffered by the employer for terminating his employment were not true, but were merely a pretext for an otherwise impermissible termination. Rothenberger testified that in July 1993, he began working with the employer in a temporary capacity as production supervisor. On August 23,1993, the employer hired Rothenberger on a permanent basis to supervise the production of building two. According to Rothenberger, the employer gave him an oral evaluation, which resulted in a raise. Rothenberger testified that when he was hired to supervise building two, there was a problem with misplaced parts, and that the department was 22,000 parts behind in production. Rothenberger stated that he solved both problems and, by the end of December 1993, the department was behind by only one part.
A termination report contained in the record, dated January 14, 1994, and written by the plant manager, indicates that "Rothenberger was on a 6-month probation for the *1223 position of supervisor of building # 2. In my judgment, [Rothenberger] will not be able to supervise building # 2 within this 6 months." We would note, however, that the employer hired Rothenberger on August 23, 1993. A document contained in the record, dated August 20, 1993, and signed by Rothenberger, states the following: "I understand I am being hired as a full-time employee and acknowledge that I have been informed and fully understand that I am on a 90-day probational period." Thus, it would appear that Rothenberger's probation period had already expired when he suffered his injury.
Rothenberger testified that he never received any written warnings or reprimands from the employer regarding his job performance. In fact, it is undisputed that Rothenberger's personnel file contained no written reprimands; no written evaluations; and no documentation of the on-going meetings, which Medlin alleges that he had with the plant manager regarding Rothenberger's job performance. Rothenberger produced the following testimony in support of his position that he received no reprimands:
"Q. Are there any disciplinary forms filled out in this personnel file?
"A. No.
"Q. Are there any employee evaluations in here?
"A. No.
"....
"Q. No documents indicating a written reprimand or a directive?
"A. Not that I'm aware of.
"Q. And there are no documents of these meetings that occurred between you and [the plant manager]? No documentation that there was a meeting?
"A. No.
"Q. No calendar [when] these meetings occurred?
"A. No.
"....
"Q. Did you fill out any documents as a result of these meetings, like a termination decision?
"A. No, I wouldn't do that. That would be [the plant manager's] responsibility.
"Q. Okay. So [the plant manager] would have filled out some document, like a termination [decision].
"A. Yes.
"Q. Should a supervisor be given a written reprimand or evaluation or instructions, written, providing him an opportunity to correct those deficiencies before termination?
"A. Yes."
Furthermore, Rothenberger testified that after the employer terminated Rothenberger's position, he specifically requested a job in foundry or production, but that the employer's plant manager told him "no." The employer, however, contends that it did offer Rothenberger another position.
Rothenberger also testified that the employer had on other occasions released temporary employees who had suffered on-the-job injuries. According to Rothenberger, the employer sent these employees back to temporary services. Rothenberger was unable to recall the names of those persons. However, he was able to identify one person by his first name, i.e., Tim, and another person by the color of his hair, i.e., red.
In the instant case we find that Rothenberger presented substantial evidence to refute the employer's proffered legitimate reason for terminating his position. Clearly, the conflicting evidence in this case creates a genuine issue of material fact as to whether the reasons offered by the employer for terminating Rothenberger's employment were merely a pretext for an otherwise impermissible termination. Twilley, supra.
Additionally, we would note that the employer, in its brief, argues that Rothenberger failed to state a prima facie case for retaliatory discharge. Specifically, the employer contends that Rothenberger's injury did not prevent him from missing any time from work, an element which it deems a prerequisite for a prima facie showing of retaliatory discharge. We disagree.
*1224 In the instant case Rothenberger sustained an on-the-job injury on November 30, 1993. On that same day he sought medical treatment for his injuries under the Workers' Compensation Act, he returned to work, he filed a first report of injury, and he took the rest of the day off. He returned to work the following day. Approximately two months later, the employer terminated his position.
Based on the above-stated scenario, we find that Rothenberger presented a prima facie case of retaliatory discharge regardless of whether his injuries prevented him from missing time from work. This is true, especially since we find that Rothenberger presented substantial evidence to support his contentions on appeal. To conclude otherwise would be contrary to the beneficent goals of the Workers' Compensation Act. See Motion Industries, Inc. v. Pate, 678 So.2d 724, 726 (Ala.1996).
In Culbreth, 599 So.2d at 1122, our supreme court stated that an employee had established a prima facie case of retaliatory discharge, filed pursuant to § 25-5-11.1, by showing the following:
"[The employee] filed a worker's compensation claim for a work-related injury; the injury prevented him from working [for a period of time]; he subsequently returned to work; and upon his return he was informed that he no longer had a job."
The employer correctly points out that this court in some instances has interpreted § 25-5-11.1 to suggest that an employee must miss time from work as a result of his or her injury. See, e.g., Haygood v. Wesfam Restaurants, Inc., 675 So.2d 1312 (Ala.Civ.App.1996). In other instances this court has interpreted § 25.5.11.1, to suggest that an employee may, can, or could establish a prima facie case by showing that the employee had missed time from work. See, e.g., Allen v. Albrecht Enterprises, Inc., 675 So.2d 425 (Ala.Civ.App.1995).
After carefully reviewing the history of these Cases, however, we find the latter interpretation to be more appropriate. It is very logical to assume that an employee could sustain an on-the-job injury that required medical treatment, but did not prevent the employee from actually or physically performing his job. Thus, any language to the contrary found in cases such as Haygood, supra, is overruled.
In light of the foregoing, the judgment of the trial court is due to be reversed and the case remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., concurs specially.
THOMPSON, J., dissents.
CRAWLEY, Judge, concurring specially.
The parties did not raise or argue the issue whether Rothenberger presented a prima facie case of retaliatory discharge merely by alleging that he filed a workers' compensation claim and two months later he was terminated from his employment.
Our supreme court has stated that a court cannot assume that "because [a worker] was terminated after he had filed [a workers' compensation] claim, the termination was retaliatory." Hayden v. Bruno's, Inc., 588 So.2d 874, 876 (Ala.1991). The court, however, has not yet spelled out what more a worker must presentbeyond the timing of the worker's injury and the worker's terminationto establish that he was fired "solely because" he had filed a claim for workers' compensation benefits. See § 25-5-11.1, Ala.Code 1975.
THOMPSON, Judge, dissenting.
I would affirm the trial court's summary judgment on Rothenberger's retaliatory discharge claim. In its order, the trial court did not elaborate on the reason it entered the summary judgment in favor of Cast Products. "The law is clear that a judgment must be affirmed if it is proper on any basis." State ex rel. Ohio v. E.B.M., 718 So.2d 667, ----(Ala.Civ.App.1997) (quoting Upchurch v. Universal Underwriters Ins. Co., 610 *1225 So.2d 1163, 1167 (Ala.Civ.App.1992)). I do not believe Rothenberger made out a prima facie case of retaliatory discharge; thus, I would affirm the summary judgment on that basis.
Rothenberger had the initial burden of establishing a prima facie case that he was fired for an impermissible reason, that is, that he was fired because he filed a claim for workers' compensation benefits. See Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364 (Ala.1988). The evidence, viewed in a light most favorable to Rothenberger, the nonmovant, suggests that Rothenberger suffered an on-the-job injury on November 29, 1993. On that same day, he received medical treatment for his injury. Rothenberger left work early on the day of his injury; however, he missed no other time from work and required no further medical treatment because of his injury.
In January 1994, approximately two months after the injury, Rothenberger was fired from his job at Cast Products. Rothenberger testified that his supervisor told him that he had not performed all of the requirements of his job satisfactorily; however, Rothenberger testified that he did not believe his supervisor's stated reason for his dismissal. Rothenberger stated that his job-related injury was "the only reason I could come up with as a reason that they would fire me." Rothenberger also alleged that two temporary workers were fired after being injured; however, Rothenberger could not identify those workers other than to say that one was named Tim and the other had red hair.
Thus, the only evidence that Rothenberger presented in an attempt to make a prima facie case of retaliatory discharge is the timing of his dismissal and his allegation that other, unidentified temporary workers had been dismissed after suffering an injury on the job. I do not believe this evidence establishes Rothenberger's prima facie case.
Although no court has determined how much evidence a worker is required to present in order to establish a prima facie case of retaliatory discharge, I believe that more evidence is required than the mere timing of the dismissal and an unsubstantiated allegation of similar firings of unidentified coworkers. To allow this evidence to establish Rothenberger's prima facie case would require the courts to assume that an employer's motive was improper and retaliatory when it fires an employee any time after that employee is injured on the job. The Supreme Court of Alabama has stated that a court may not assume that a worker was discharged in retaliation for making a workers' compensation claim merely because the worker is fired after making that claim. Hayden v. Bruno's, Inc., 588 So.2d 874, 876 (Ala.1991).
In Alabama, at-will employees such as Rothenberger may be fired for a good reason, for a bad reason, or for no reason. Culbreth v. Woodham Plumbing Co., 599 So.2d 1120, 1121 (Ala.1992). The Alabama legislature created an exception to this general rule by enacting § 25-5-11.1, Ala.Code 1975, which provides that a worker may not be dismissed "solely" for filing a claim for workers' compensation benefits. I do not believe Rothenberger presented evidence sufficient to create a prima facie case that he was fired solely for filing a claim for workers' compensation benefits. There is simply not sufficient evidence of a nexus between the filing of Rothenberger's claim and his dismissal two months later to allow Rothenberger to proceed with his claim for retaliatory discharge. Because I would hold that the trial court properly entered the summary judgment in favor of Cast Products, I must respectfully dissent.
NOTES
[1] In Dunlop Tire Corp., the employee, in his complaint for retaliatory discharge, alleged that he had filed a "First Report of Injury" with his employer, in accordance with the Alabama's Workers' Compensation Act. The employer admitted the allegation in its answer to the complaint. Our supreme court held that for purposes of appeal, the employee had filed a workers' compensation claim.