Bryan Turner appeals a summary judgment entered in favor of Shorty's Truck and Railroad Car Parts, Inc., on Turner's claim of retaliatory discharge. This case is before this court pursuant to Ala. Code 1975, § 12-2-7 (6).
On May 27, 1996, Turner suffered an on-the-job injury while he was working in the line and scope of his employment with Shorty's Truck and Railroad Car Parts, Inc. (employer). Turner filed for, and received, workers' compensation benefits as a result of his injury. In August 1996, the employer terminated Turner's employment.
On May 27, 1997, Turner filed a complaint against the employer, alleging, in part, that he had been discharged from his employment in retaliation for filing a claim for workers' compensation benefits.
On February 3, 1998, the employer filed a motion for a summary judgment, along with a narrative summary of undisputed facts; the deposition testimony of its president, Raymond Griffin; the deposition testimony of Turner; and other supporting documents. Turner filed a brief in opposition, along with his deposition testimony; the deposition testimony of Raymond Griffin; and the affidavits of two former employees, Michael Vanwanderhan and Keith Smith.
On February 19, 1998, the trial court conducted a hearing and on March 24, 1998, entered a summary judgment in favor of the employer.
Turner appeals.
We note that in appropriate circumstances, the general rule under Alabama law is that an employee may be discharged from his employment, with or without cause or justification, for a good reason, a wrong reason, or no reason at all. Culbreth v. WoodhamPlumbing Co., 599 So.2d 1120 (Ala. 1992). Section 25-5-11.1, Ala. Code 1975, provides an exception to this general rule, which states that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits . . . ." See McClain v. Birmingham Coca-Cola BottlingCo., 578 So.2d 1299 (Ala. 1991).
In Twilley v. Daubert Coated Products, Inc, 536 So.2d 1364,1369 (Ala. 1988), our supreme court stated the following in regard to a retaliatory discharge action filed pursuant to §25-5-11.1:
 "We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was `terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination."
Furthermore, in the context of a summary judgment motion filed by the employer in regard to a retaliatory discharge claim, our supreme court, in Culbreth, 599 So.2d at 1122, stated the following:
 "[I]f the [employer] has supported a summary judgment motion with evidence of a legitimate reason for terminating the [employee], the [employee] must then refute that showing with his own prima facie
case; of course, the [employee] has no burden to produce evidence before trial *Page 1281 
until the [employer] has made and properly supported a motion for [a] summary judgment. If the [employer's] showing of a legitimate reason is conclusive enough to establish that `there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law,' Rule 56 (c), Ala. R. Civ. P., the [employee] would also have to produce evidence to refute that showing."
In the instant case, the employer had the initial burden of showing that Turner's employment was terminated for a legitimate reason. In support of its motion for a summary judgment, the employer offered the testimony of its president, Raymond Griffin. Griffin's testimony established a prima facie showing that Turner's employment was terminated because of his attitude, his sloppiness, his failure to keep a clean workplace, his "dragging" around on the job, his disregard for certain safety rules, and his tardiness. Turner's personnel file included two written warnings regarding his tardiness and his disregard for certain safety rules. The warnings were dated February 13, 1996, and May 17, 1996.
Griffin stated that Turner's main problem, however, was his attitude. Specifically, Griffin testified that on Wednesday, July 17, 1996, he spoke to Turner concerning the amount of time Turner was spending to adjust a carburetor on a metal saw. Griffin told Turner that it took ten minutes to adjust the carburetor, not two days. Turner, in response, "mouthed" off at Griffin, and Griffin instructed Turner to take two weeks off and to "get his attitude problem straightened out." It is undisputed that Griffin did not instruct Turner to return to work on a specific date and that, during the two-week period, Turner did not call to inquire about his suspension or a return date. Instead, Turner returned to work on Monday, August 5, 1996, almost three weeks later.
When Turner returned, Griffin informed Turner that, because Turner had not returned to work on Wednesday, July 31, 1996 — exactly two weeks later — Griffin assumed that Turner had quit.[1] The employer did not have a written policy regarding the effect of an employee's failure to return to work following a suspension.
Turner testified as follows regarding his conversation with Griffin:
 "Q. What did [you and Griffin] talk about?
 "A. Just basically why my card had been pulled, and that I had returned to work. It was my understanding that I had served my sentence so to speak.
 "Q. What did [Griffin] tell you, in other words, about your card?
 "A. Just that I didn't have a job there anymore.
"Q. Did you [ask] why?
"A. Yes. I asked why.
"Q. What was the response?
 "A. Because I didn't return on the right day.
 "Q. Did [Griffin] tell you, you're not working because you made a workers' [compensation] claim?
"A. No, not specifically.
". . . .
 "Q. Do you think it's reasonable for someone to assume that if someone doesn't appear on a day when they think they're supposed to come back to work and they don't hear from them, that it's logical to assume that person is not going to come back to work?
". . . .
 "A. If I know the day that you're supposed to be back at work, I suppose that is logical."
Clearly, it is logical to assume that Turner had a duty to report to work two weeks from the date of his suspension and that when he did not, the employer was justified in terminating his position. *Page 1282 
Turner, on the other hand, contends that the reasons proffered by the employer for terminating his employment were not true, but were merely a pretext for an otherwise impermissible termination.
Suffice it to say, we have reviewed Turner's testimony and conclude that it is, at most, speculative:
 "Q. Tell me as close [as] you remember what you claim Raymond Griffin told you.
 "A. It's just that I wasn't able to keep up and do what I had been doing prior to my injury. I was trying to explain that I had slowed down. In a manner of speaking, because I wasn't able to do what I had done prior to that, I was taking it just because my leg has been injured.
 "Q. Did he tell you [that] you were taking advantage of the injury? Did he use those words or is that something you read into his communication?
 "A. It was implied, the leg should have been well, you know.
 "Q. Would it be fair then that Raymond Griffin did not tell you, you're taking advantage of your injury? He didn't say it in those terms did he?
 "A. I don't recall per se. I can't give you a verbatim.
 "Q. Did he tell you, meaning Mr. Griffin, That he thought you should be [doing] better with your knee than you were doing?
"A. Yes.
"Q. At least in his opinion?
 "A. Right. That certain jobs should be done better or quicker, and I wasn't able to."
(Emphasis added.)
In other words, Turner's testimony suggests that Griffin made no overt statements to Turner regarding his injury. Instead, it would appear that Turner merely assumed that Griffin terminated Turner's position because of his injury. As noted previously, Griffin stated that on the day he suspended Turner, he had a conversation with Turner regarding the amount of time Turner had spent adjusting a carburetor, i.e., "dragging." There was no direct evidence, however, that Turner's "dragging" was related to his injury.
Turner also relied on the affidavits of two former employees, Keith Smith and Mike Vanwanderhan. The employer filed a motion to strike the majority of the testimony contained in the affidavits, because the testimony was based on inadmissible hearsay and speculation. The trial court granted the motion. Hence, it appears that the only relevant and admissible evidence contained in the affidavits is the following statements made by Griffin:
 "I have the feeling [Turner] won't be coming back."
 "Looks like you're going to have this job by yourself."
Clearly, these statements do not constitute substantial evidence creating a genuine issue of a material fact, i.e., the statements do not suggest that Turner's employment was terminated solely in retaliation for filing a workers' compensation claim.
Suffice it to say, the evidence reveals that Turner was nothing more than an at will employee and that his employment could be terminated for a good reason, for a bad reason, or for no reason. Culbreth. In the instant case, the employer presented sufficient evidence to indicate that Turner's employment was terminated for legitimate reasons, not because he filed a claim for workers' compensation benefits. Stated differently, Turner failed to present substantial evidence of a connection between the filing of his claim and his subsequent dismissal. Culbreth.
Consequently, the summary judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18 10 (e), Ala. Code 1975.
AFFIRMED.
All the judges concur.
[1] On appeal the employer contends that Turner's employment was not terminated, but that Turner, instead, quit. However, in his answers to interrogatories, Griffin stated that Turner's employment was "terminated" for his failure to return to work. Hence, for purposes of this appeal, we will presume that Turner's employment was terminated. *Page 1283