WRIGHT, Retired Appellate Judge.
Heather Hutto filed an action against Farmers Exchange Bank (“Farmers”) pursuant to § 25-5-11.1, Ala.Code 1975, alleging that Farmers terminated her employment in retaliation for her having filed a workers’ compensation claim. The trial court entered a summary judgment in favor of Farmers. Hutto appeals. This case is before us pursuant to § 12-2-7(6), Ala. Code 1975.
Hutto began working for Farmers in September 1996. On January 13, 1997, Hutto was asked to attend a meeting with Marilyn Bennett, Vice-Presideni/Cashier for Farmers; and Gail Klonglan, Hutto’s immediate supervisor. At that meeting, Hutto was asked to sign a formal reprimand, which included the following “points of discussion”:
“1. Importance of resolving problems within normal framework of [Farmers] organization.
“2. Importance of using the absolute, whole complete truth and honesty in all bank-related activities.
“3. Importance of obvious teamwork for the common good of the entire staff. “4. Importance of the handling of confidential information in the proper professional manner.”
Hutto, after contacting legal counsel, refused to sign the reprimand. Approximately 30 minutes after the conclusion of the meeting, Hutto began to experience shortness of breath, tightness in her chest, stomach pains, and dizziness. She contacted her doctor and went to his office for an examination. Her doctor prescribed tranquilizers and told her to stay home from work for three days. She was subsequently referred to another doctor. Both doctors agreed that she suffered from stress-related symptoms.
Hutto subsequently called Klonglan and asked if the symptoms might be covered by workers’ compensation. Klonglan advised Hutto that she did not think they were covered, but said she would check with the workers’ compensation carrier. Klonglan also advised Hutto that she need not be concerned, because she had sick leave that she could use if necessary. When Hutto made a formal request to file a workers’ compensation claim, Bennett immediately requested the documents from the carrier. Once i*eceived, the documents were completed and returned to the carrier on January 24, 1997.
From January 13 through January 31, Hutto was sporadically out of the office due to her stress-related symptoms. During this period, she had been transferred from the position of closing loans to the position of processing loans. Hutto thought of this change in position as a demotion. Klonglan explained that in order for Hutto to become a loan officer, she had to begin this “cross-training” process. Klonglan stated that she saw no productivity from Hutto in the new position. After seeking legal counsel, Farmers terminated Hutto’s employment on January 31, 1997.
An employment contract is terminable at will by either party, with or without cause or justification, for a good reason, a wrong reason, or no reason at all. Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala.1992). Section 25-5-11.1, Ala. Code 1975, provides an exception to that rule. That section provides:
“No employee shall be terminated by an employer solely because the employee has instituted or maintained any ac *1235 tion against the employer to recover workers’ compensation benefits under this chapter....”
Concerning actions brought under this section, our supreme court has held:
“[A]n employee may establish a prima facie case of retaliatory discharge by proving that he was ‘terminated’ because he sought to recover worker’s compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason [given by the employer] was not true but a pretext for an otherwise impermissible termination.”
Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369 (Ala.1988).
In the context of a summary-judgment motion made by the defendant in a retaliatory discharge action, our supreme court has held:
“[I]f the defendant has supported a summary judgment motion with evidence of a legitimate reason for terminating the plaintiff, the plaintiff must then refute that showing with his own prima facie case; of course, the plaintiff has no burden to produce evidence before trial until the defendant has made and properly supported a motion for summary judgment. If the defendant’s showing of a legitimate reason is conclusive enough to establish that ‘there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law,’ Rule 56(c), Ala. R. Civ. P., the plaintiff would also have to produce evidence to refute that showing.”
Culbreth, 599 So.2d at 1122.
In this case, the trial court entered a summary judgment without specifying its reasons. Therefore, this court must affirm the summary judgment if it is proper for any reason. Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala.1992).[1]
Farmers had the initial burden of showing that Hutto’s employment was terminated for a legitimate reason. In support of its motion, Farmers offered Bennett’s affidavit, wherein she listed numerous reasons for Hutto’s termination. The affidavit was substantiated by Bennett and Klonglan’s deposition testimony. Bennett averred that Hutto was terminated for the following reasons:
“1. [Hutto] made an unreasonable number of personal, long-distance phone calls from the bank, and it interfered with productivity at the bank.
“2. [Hutto] was uncooperative in cross-training, which is a requirement for all loan personnel. Cross-training involves learning each part of the loan administration process and is required by all lending institutions, to my knowledge. “3. [Hutto] made numerous disrespectful comments regarding [the president of the bank] and myself to other employees of the bank, to include Gail Klon-glan.
“4. On two occasions, [Hutto] pulled credit ratings or credit reports on fami *1236 ly members without the appropriate authorization. After the first occasion, [Hutto] was advised that this was inappropriate and violated certain rules and regulations of the Fair Credit Reporting Act established under Title VI of the Consumer Credit Protection Act. Then in January 1997, I received an invoice from Equifax Credit Information Services indicating that [Hutto] had made an additional request on the same family member after she had been advised that this behavior was inappropriate and could expose the bank to liability.
“5. [Hutto] provided Barbara Helms’s pay stub (which is a confidential record per bank policy) to the law firm of Jinks and Smithart [Hutto’s former employers], asking them to review the [cafeteria] program for the bank. The records she gave Jinks and Smithart were not her own, but the records of Barbara Helms. First, [Hutto] violated policies related to confidential employee records. Second, [Hutto] violated the policy regarding handling bank problems within the bank. [Hutto] referred this matter to an attorney without first talking to me, and I am the plan administrator for the [cafeteria] program. The aforementioned attorneys contacted the bank regarding the [cafeteria] program based on [Hutto’s] phone call and fax.
“6. One of my employees advised me that [Hutto] asked her to lie to [the president of the bank] and me regarding the [cafeteria] situation.
“7. [Hutto] intimated to other employees that she might have grounds to sue the bank on more than one occasion.
“8. [Hutto] was disrespectful to Gail Klonglan and myself when we attempted to formally reprimand her for some of the items set out above. She further refused to sign the reprimand related to that meeting.”
Hutto contends that the reasons proffered by Farmers for terminating her employment were not true, but were merely a pretext for an otherwise impermissible termination.
After our thorough review of the record, we find that Hutto failed to present substantial evidence to rebut Farmers’ legitimate proffered reasons for terminating her employment. Hutto’s presumption that her employment was terminated because she sought workers’ compensation benefits is, at best, based on mere speculation and conjecture and, as such, is insufficient, as a matter of law, to create a fact question so as to defeat Farmers’ properly supported motion for a summary judgment. Irons v. Service Merchandise Co., 611 So.2d 294 (Ala.1992); Turner v. Shorty’s Truck & Railroad Car Parts, Inc., 723 So.2d 1279 (Ala.Civ.App.1998). Consequently, the summary judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
All the judges concur.

. Farmers contends that a summary judgment was proper because Hutto failed to establish a prima facie case of retaliatory discharge. It asserts that Hutto did not sustain a workers’ compensation injury, because she failed to present evidence of a physical injury or trauma to the body. Farmers contends, at best, that she alleged a mental disorder, which is specifically excluded by the definition of injury, as set forth in § 25-5-1, Ala.Code 1975.
Section 25-5-11.1 provides that an employee’s employment may not be terminated solely because she "has instituted or maintained any action against the employer to recover workers’ compensation benefits....” The section does not provide that one must have a meritorious claim for workers' compensation. If we were to construe that section as such, our holding would be in conflict with the analogous rationale and reasoning of our supreme court in McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala.1991).