PITTMAN, Judge.
This appeal by Robert Carter, the former employee, challenges the trial court’s summary judgment for Marc Steel Company, Inc., on Carter’s suit claiming retaliatory discharge for filing a worker’s compensation claim. Carter appealed to the Alabama Supreme Court which transferred his case to this court pursuant to § 12-2-7(6), Ala.Code 1975. Carter began working for Marc Steel on June 4, 1998. Marc Steel hired him to assist the warehouse manager and, if his performance was satisfactory, he would eventually be promoted to the position of warehouse manager. By all accounts, Carter performed well over the first few months of his employment and after 90 days he was given a pay raise.
Sometime in the fall, however, his performance began to deteriorate. Specifically, Carter was slow to respond, was slow to complete tasks, showed no initiative to begin another task after completing a task, took inappropriate smoking breaks, and was less than receptive to customers. Sometime in November, Dale Hower, the principal owner of Marc Steel, learned of these performance problems from Carter’s immediate supervisor. Also in November, Carter asked Hower about receiving a Christmas bonus.[1] Although he had been with the company only six months, Carter stated that he was told that he, along with all the other 'employees, would receive a Christmas bonus.
In December 1998 an incident occurred in which Carter did not follow proper procedure. Before the required paperwork was completed, Carter loaded a truck that was being driven by a personal friend of his. Hower verbally reprimanded him for not following company procedure, but no disciplinary action was taken. In January 1999 the manager took a week’s vacation, during which time Carter was placed “in charge” of the warehouse. One day that week a truck pulled up just as Carter and a temporary helper were breaking for lunch. Marc Steel has a sign posted that states “no loading between 12:00-12:30 p.m.” because that half-hour is the employees’ lunch break. Carter stated that he told the temporary employee that the truck could wait until 12:30 p.m. to be unloaded and then he went to lunch. Apparently, the temporary worker unloaded the truck, and both Carter’s immediate supervisor and Hower questioned Carter about this situation.
The following day Carter was experiencing chest pains, he called in sick, and he went to the doctor. His absence left Marc Steel extremely shorthanded; the temporary worker was the only employee in the warehouse. Carter returned to work the next day, bringing a note from the doctor with him. Hower again orally reprimanded Carter for leaving the business with only a temporary worker staffing the warehouse.
On January 15, 1999, Hower drafted a memorandum to Carter’s personnel file noting that after the above-mentioned reprimand, Carter refused to accept responsibility for his actions. Carter was told he could not work any overtime and that the owner was seriously considering terminating his employment. Hower stated that the following week, on January 18, 1999, he spoke with Carter about his performance. Hower reinstated half of Carter’s *931 overtime authorization, told him that his performance would be watched over the next few weeks, and told him that he would be terminated if his performance did not improve. While a memorandum recounting this conversation was found in Carter’s personnel file, Carter denied Hower ever had this conversation with him.
The very next day, Carter suffered a compensable on-the-job injury to his back. Carter worked the next day, but he did not come to work the second day; he telephoned his regular physician, who prescribed pain medication. Carter returned to work the next day and informed Marc Steel that his back was bothering him from an on-the-job injury. Marc Steel sent Carter to the Thuss Clinic, where it sends all of its employees injured on-the-job. He was treated by Dr. Turnley, who ordered Carter to remain off of work for a period of time.
Shortly after Carter reported his injury, Marc Steel informed Protective Life, its workers’ compensation insurance carrier about Carter’s injury. Initially, Protective Life denied the claim. Sometime in March, however, Protective Life informed Carter that it was accepting the claim as compensable. On February 15, 1999, Carter was examined by Dr. Kirschberg, a workers’ compensation doctor. Dr. Kirschberg determined that Carter had no significant back problem and returned Carter to work effective February 16, 1999. Carter denied receiving anything from Dr. Kirschberg indicating that he should return to work. Because Hower had seen only Dr. Turnley’s medical notes removing Carter from work for a period of time, and because Carter told Marc Steel that he was still unable to work, throughout February and until mid-March Marc Steel assumed Carter was being held out of work by Dr. Kirschberg. Carter stated that during this time no workers’ compensation doctors were approved for him to see and he was treated only by his personal physician.
On April 12, 1999, Carter went to the local unemployment office to fill out forms so that his family could receive subsidized housing. At no time while he was there did he apply for unemployment benefits or represent that he was no longer employed by Marc Steel. Shortly after April 15, 1999, Hower received a claim notice from the unemployment agency asking for verification that Carter was no longer working at Marc Steel. Hower understood the form to mean that Carter had applied for unemployment benefits while he was still employed by Marc Steel. Hower did not actually learn that Carter’s unemployment application form was a request for subsidized housing and not for unemployment benefits until discovery in preparation for this lawsuit.
About March 15, 1999, Hower learned for the first time about Dr. Kirschberg’s note releasing Carter to work in mid-February. During the period from mid-February through mid-March, Marc Steel had been shorthanded without Carter, and Hower was frustrated to learn of Carter’s failure to return to work after he was released by Dr. Kirschberg. Consequently on March 22, Hower wrote Carter a letter, which he sent by certified mail, stating that he had just received Dr. Kirschberg’s release. In the letter Hower informed Carter if he did not return to work by March 31, Hower would assume Carter had abandoned his job. Furthermore, Carter needed to provide a documented statement of why he had been absent from work since February 16, 1999. Carter signed for the certified letter on March 24,1999.
In response to the letter, Carter returned to work before March 31 and gave *932 Hower a medical slip from Carter’s personal physician. This slip indicated that Carter had not been able to work because of back pain from February 24 through March 25, 1999. Hower did not consider this medical slip sufficient because it was not from a workers’ compensation doctor nor did it cover the entire period of Carter’s absence. Regardless, Carter had responded to Hower’s letter and had informed the company of his medical status as requested, so no disciplinary action was taken.
Carter’s next appointment with a workers’ compensation doctor was on April 14, 1999. In advance of the appointment Hower sent Carter another certified letter requiring Carter to report to work at 7:00 a.m. on April 15, 1999, with either a doctor’s release to work or a note specifying the medical treatment needed to enable Carter to return to work. Carter signed for the certified letter on April 2, 1999.
On April 14, 1999, Carter kept his appointment with Dr. Randolph George, who prescribed 10 days of bed rest for Carter. Both Carter and his attorney telephoned Marc Steel on either April 14 or 15, 1999, to relay the doctor’s orders. On April 22, 1999, Hower sent Carter another certified letter, requiring him to report to work the morning after his next scheduled appointment with Dr. George. Once again, How-er requested that Carter either bring a release to work or a doctor’s note explaining the prescribed treatment to enable Carter to return to work. Carter’s wife signed for the letter on April 24, 1999, and Carter testified that he received the letter and that he understood that he should go to work on April 29, 1999, with a doctor’s report.
When Carter saw Dr. George on April 28,1999, Carter was asked to report to the hospital the following morning for a myelo-gram. On April 29, 1999, Carter spent most of the day at the hospital.[2] Neither Carter nor anyone on his behalf called Marc Steel to explain that Carter was in the hospital and that he would not be at work that day. The following day, still having heard nothing from Carter or on his behalf, Hower terminated Carter’s employment for failure to obey a direct instruction and for insubordination. Hower sent Carter a certified letter to that effect.
Carter filed a claim on May 19, 1999, alleging retaliatory discharge under § 25-5-11.1, Ala.Code 1975. On September 6, 2000, the trial court denied Marc Steel’s first motion for a summary judgment. Marc Steel filed a motion to reconsider, and on October 18, 2000, the trial court granted Marc Steel’s motion for a summary judgment. In its summary-judgment order, the trial court stated:
“In viewing the evidence in the light most favorable to the nonmoving party, Robert Carter, the Court finds and determines that the Plaintiff has failed to meet his burden of coming forward with substantial evidence which would have created a genuine issue of material fact as to whether his employer’s reason for termination is not true, but was a pretext for an otherwise impermissible termination.”
(C. 338.)
Carter contends on appeal that he provided substantial evidence that created a disputed issue of material fact as to whether Marc Steel’s stated reason for termination was a pretext for an impermissible discharge. Marc Steel contends that Carter’s termination had nothing to do with *933 his workers’ compensation claim, but rather resulted strictly from his failure to comply with the direct orders of Hower. Also, Marc Steel contends that Carter did not establish a prima facie case of wrongful termination.
Rule 56, Ala. R. Civ. P., sets out a two-part standard for entering summary judgments. The trial court must determine (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. See Hinkle v. Burgreen Contracting Co., 678 So.2d 797, 799 (Ala.Civ.App.1996). Furthermore, to defeat a properly supported motion for summary judgment, the nonmovant must present “substantial evidence” of his claim. § 12-21-12, Ala.Code 1975. Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether substantial evidence exists to defeat a summary-judgment motion, a court must view the evidence in a light most favorable to the nonmoving party. Goodwin v. City of Fultondale, 706 So.2d 766, 767 (Ala.Civ.App.1997).
Generally, employment in Alabama is terminable at will by either party, with or without cause, at any time. Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725, 728 (Ala.1987). One statutory exception to this general rule is that “[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits.” § 25-5-11.1, Ala.Code 1975.
The trial court, when faced with an employer’s motion for a summary judgment in an action involving a retaliatory-discharge claim, must determine if the employee established a prima facie case of retaliatory discharge. Carter met his burden of establishing a prima facie case under Chapman v. Boise Cascade Corp., 726 So.2d 729, 731 (Ala.Civ.App.1999), overruled on other grounds, Bleier v. Wellington Sears Co., 757 So.2d 1163 (Ala.2000). The record contains evidence showing that (1) he had been employed by Marc Steel since June 1998; (2) he suffered an on-the-job injury to his back on January 19, 1999; (3)he reported his injury to his employer; and (4) while receiving treatment for his medical condition, his employment at Marc Steel was terminated. See Dunn v. Comcast Corp., 781 So.2d 940, 943 (Ala.2000), citing Bleier, supra, at 1171. These facts are undisputed.
Thus the burden of proof then shifted to Marc Steel to offer a legitimate, nonretaliatory reason for Carter’s termination. See Twilley v. Daubert Coated Prods., Inc., 536 So.2d 1364, 1369 (Ala.1988). Marc Steel’s reasons for terminating Carter are that he failed to obey a direct order and that he was insubordinate. These nonretaliatory reasons are supported by the April 22, 1999, certified letter requiring Carter to come to work on April 29; the April 30, 1999, termination letter recounting Carter’s failure to comply with the April 22 letter; and by Hower’s deposition testimony. Once Marc Steel articulated a nondiscriminatory reason for terminating Carter, the burden of proof shifted back to Carter to prove that “the reason given by the employer was not true but a pretext for an otherwise impermissible termination.” Id.
In his opposition to Marc Steel’s motion for a summary judgment, Carter offers two primary arguments that Marc Steel’s reasons for termination were pre-textual. First, Carter argues that How-er’s statements and the memoranda re *934 garding Carter’s work performance are not consistent with the fact that Carter received a raise after he was employed for 90 days, a Christmas bonus, and reinstated overtime hours, during the time Hower says Carter’s performance was unsatisfactory. Next, he remains steadfast in his denial that Hower or his immediate supervisor ever criticized his performance (other than two specific instances) or told him that his job was in jeopardy. Carter contends that his denial of Hower’s allegations creates a genuine issue of material fact sufficient to overcome a motion for a summary judgment.[3]
Carter cites two cases in which this Court held that a genuine issue of material fact existed based solely on the employee’s affidavit as rebuttal evidence. In Bird v. Nail Air Freight, Inc., 690 So.2d 1216 (Ala.Civ.App.1996), the employee testified that his employer became upset with him for being injured and missing work to recover from his injuries. The employer testified that he fired Bird because Bird had threatened to blow up the business; it offered affidavits from four individuals who stated that they heard Bird make the threats. This Court, concluding that a genuine issue of material fact existed on the issue whether Bird actually made the alleged threats, reversed the summary judgment.
The holding in Bird would support Carter’s argument if he were able to show that he had made any attempt to comply with the April 22, 1999, certified letter requiring him to come to work on April 29, 1999, or to notify his employer why he could not comply with the letter. Carter admitted that he neither attempted to contact Marc Steel nor instructed someone to contact Marc Steel on his behalf to explain that he would be in the hospital on April 29, 1999. In fact, he argues that because Marc Steel could have telephoned the workers’ compensation doctor, the fault lies with the employer. This is simply not correct. Carter had a responsibility to keep his employer informed of his status, and his compliance with the previous certified letters shows his understanding of this fact. Our holding in Bird does not aid Carter in his appeal.
In Carroll v. A.J. Gerrard & Co., 684 So.2d 128 (Ala.Civ.App.1995), the employer offered evidence showing that Carroll had received oral and written reprimands for low production and poor work habits and that he was fired for these reasons. Like Carter, Carroll offered his own affidavit claiming that the employer had fired him solely because he had filed a workers’ compensation claim and arguing that the employer had a pattern of firing employees who filed workers’ compensation claims. However, Carroll also offered an affidavit of a former employee who detailed several instances of terminations after workers filed for workers’ compensation benefits. The employee’s submission of collaborative evidence indicating a pattern of impermissible terminations distinguishes that.case from Carter’s. The holding in Carroll does not offer Carter any assistance in his appeal.
In spite of all the testimony given by Carter to establish the fact that his dis *935 missal was pretextual, there is one clear fact. Carter testified that he received a certified letter requiring him to return to work on April 29,1999, and that he did not do so. The mere fact that he assumed his employer would know he was in the hospital for tests is insufficient to overcome his employer’s testimony that he had no knowledge of Carter’s whereabouts on April 29, 1999. Carter’s own testimony supports Marc Steel’s termination of employment for failing to follow the directives of his supervisor. Therefore, Carter’s contention that he was fired solely because he sought workers’ compensation benefits is not supported by “substantial evidence” as required by Alabama law. See Hutto v. Farmers Exch. Bank, 735 So.2d 1233 (Ala.Civ.App.1999).
We conclude that the summary judgment is due to be affirmed.
AFFIRMED.
CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., concurs in the result.
YATES, P.J., dissents.

. Hower stated that Carter actually asked about pay raises, not Christmas bonuses. Hower also stated that on December 15, 1998, he had a conversation with Carter in which they discussed the earlier request for a raise. During this meeting Hower listed Carter's performance problems, informed him that his work ethic needed to improve, and denied Carter's request for a year-end raise. Carter denies this conversation ever occurred.

. During discovery Hower produced Carter’s personnel file which contains several medical reports generated by the hospital and recording the results of numerous tests performed on Carter on April 29, 1999.

. In his appellate brief, Carter lists eight specific items he claims amount to substantial evidence that the reasons given by Marc Steel were pretextual. These items were generally discussed in Carter’s brief in opposition to Marc Steel’s motion for a summary judgment filed in the trial court, but not specifically enumerated in that document. This court reviews an argument against the validity of a summary-judgment motion only to the extent that the record on appeal contains materials from the trial-court record presenting that argument to the trial court before or at the time of submission of the motion for a summary judgment. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992).